## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

—————————————————————————————

AMERICAN OVERSIGHT,                                     )
1030 15th Street NW, B255                               )
Washington, D.C. 20005,                                 )
                                                   )
and                                                     )
                                                   )
DEMOCRACY FORWARD FOUNDATION,                           )
1333 H Street NW, 11th Floor                            )
Washington, D.C. 20005,                                 )
                                                   )
       *Plaintiffs*, )
                                                   )
v.                                                      )          Case No. 19-cv-2519
                                                   )
U.S. DEPARTMENT OF VETERANS AFFAIRS,                    )
810 Vermont Ave. NW                                     )
Washington, D.C. 20571,                                 )
                                                   )
ROBERT WILKIE, in his official capacity as              )
U.S. Secretary of Veterans Affairs,                     )
810 Vermont Ave. NW                                     )
Washington, D.C. 20571,                                 )
                                                   )
NATIONAL ARCHIVES AND RECORDS                           )
ADMINISTRATION,                                         )
700 Pennsylvania Ave. NW                                )
Washington, D.C. 20408,                                 )
                                                   )
and                                                     )
                                                   )
DAVID FERRIERO, in his official capacity as             )
Archivist of the United States,                         )
700 Pennsylvania Ave. NW                                )
Washington, D.C. 20408,                                 )
                                                   )
       *Defendants*. )

—————————————————————————————

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.      Plaintiffs American Oversight and Democracy Forward Foundation ("Democracy Forward") bring this action against Defendants the U.S. Department of Veterans Affairs ("VA" or "the Department"), Robert Wilkie, in his official capacity as Secretary of Veterans Affairs, the National Archives and Records Administration ("NARA"), and David Ferriero, in his official capacity as Archivist of the United States, under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701, *et seq.*, and the Federal Records Act ("FRA"), 44 U.S.C. §§ 2101, *et seq.*; 44 U.S.C. §§ 3301, *et seq.*; and 44 U.S.C. §§ 3106, *et seq.*

2.      This action challenges the failure of Defendants to carry out their nondiscretionary duties under the FRA to initiate an enforcement action to recover VA federal records containing the communications of former Secretary of Veterans Affairs David Shulkin concerning government business—including communications regarding VA business with private associates of the president—that have been unlawfully removed from VA custody through the improper use of non-official electronic messaging accounts.

3.      Records produced to American Oversight by VA indicate that former Secretary Shulkin used a private, non-official email account to communicate with private associates of President Trump from his Mar-a-Lago Club ("the Mar-a-Lago associates") about VA's policies and operations. Exhibit A. These records also demonstrate that former Secretary Shulkin used this private, non-official email account to send emails with the Mar-a-Lago associates to a subordinate VA official with direction that he take action on their requests and that former Secretary Shulkin failed to follow required procedures for transferring those records to agency custody. *Id.*; 44 U.S.C. § 2911.

4.      Public reports, further, indicate that former Secretary Shulkin created a private, non-official email account specifically to communicate with the Mar-a-Lago associates regarding

VA business. Ben Kesling, *House Democrats to Probe How Trump's Associates Influenced the VA*, Wall Street Journal (Feb. 8, 2019, 9:02 AM), https://www.wsj.com/articles/house-democrats-to-probe-how-trumps-associates-influenced-the-va-11549634520.  Former Secretary Shulkin's use of private email to communicate with these private associates of the president has also been the subject of a U.S. House of Representatives committee probe. *Id.*

5.      Records VA has produced in response to public records requests to Plaintiffs and others demonstrate that the Mar-a-Lago associates, with whom former Secretary Shulkin communicated through a non-official email account, exercised significant influence over VA policy and operations even as they held no formal government positions. Isaac Arnsdorf, *The Shadow Rulers of the VA*, ProPublica (Aug. 7, 2018, 6:29 PM), https://www.propublica.org/article/ike-perlmutter-bruce-moskowitz-marc-sherman-shadow-rulers-of-the-va; *Mar-a-Lago FOIA Records*, Democracy Forward Foundation (last visited Aug. 6, 2019), https://democracyforward.org/mar-a-lago-foia-records/; *VA Records Regarding Concerned Veterans of America and the President's Mar-a-Lago Associates*, American Oversight (Feb. 25, 2019), https://www.americanoversight.org/document/va-records-regarding-concerned-veterans-of-america.

6.      When agency officials confer with private individuals regarding official agency business, it is important to ensure that records of those communications are preserved. The need to preserve such records is recognized by statute and has long been respected by federal agencies and agency officials. 44 U.S.C. § 3301. If agency officials use private email accounts to communicate and confer with private individuals regarding official matters—a practice that violates VA's policies—those officials must ensure that their communications are transferred to

the agency and preserved according to agency policy and federal law. Preservation of such records aids in ensuring agency transparency and promotes efficient agency operations.

7.     Communications to or from agency officials regarding or considering advisory input from individuals outside an agency are "appropriate for preservation" as federal records pursuant to the requirements of 44 U.S.C. § 3301. Under the FRA, records are "appropriate for preservation" when they pertain to agency business as "evidence of the organization, functions, policies, decisions, procedures, operations, or other activities" of the agency, or contain data with "informational value." *Id.* at § 3301(a)(1)(A). Communications between agency officials and private individuals that influence and concern official agency activities clearly pertain to agency business as evidence of department functions, policies, decisions, and operations, and records of such communications plainly have "informational value." *See id.* Former Secretary Shulkin's communications with the Mar-a-Lago associates through private accounts regarding VA policies and operations, as well as any other emails with private individuals concerning agency business, are plainly federal records subject to these FRA preservation requirements. *See id.*

8.     Following letters sent by American Oversight and Democracy Forward alerting Defendants to Secretary Shulkin's unlawful removal of VA records, and to concerns American Oversight raised separately to VA's counsel in the course of a Freedom of Information Act ("FOIA") matter, VA has acknowledged former Secretary Shulkin's unlawful removal of federal records through the use of private email and that removed records exist that the agency may recover. Exhibit C; Exhibit D at 5; *see also* Joint Status Report, *American Oversight v. U.S. Dep't of Veterans Affairs et al.*, Case No. 18-cv-2463 (D.D.C. June 27, 2019), ECF No. 14 at 3. Defendants have not, however, recovered all such records or initiated an enforcement action through the Attorney General to ensure their recovery.

9.      Defendants have consequently failed, individually and collectively, to carry out their nondiscretionary obligations under the FRA and have thereby violated the APA. 44 U.S.C. §§ 3301; 44 U.S.C. §§ 3016.

## PARTIES

10.     Plaintiff American Oversight is a nonpartisan, non-profit corporation organized under section 501(c)(3) of the Internal Revenue Code and incorporated under the laws of the District of Columbia. It is committed to promoting transparency in government, educating the public about government activities, and ensuring the accountability of government officials. Through research and requests made under the FOIA, 5 U.S.C. § 552, for records preserved pursuant to the FRA, American Oversight uses the information it gathers, and its analysis of that information, to educate the public about the activities and operations of the federal government—including of VA—through reports, published analyses, press releases and other media. As part of its work, American Oversight has submitted FOIA requests to the VA and will continue to seek records from the Department in the future, including records reflecting the communications of former Secretary Shulkin concerning VA business, policies, and operations.

11.     On May 4, 2018, and August 23, 2018, American Oversight submitted FOIA requests to VA seeking records regarding the influence of the Mar-a-Lago associates on VA policies and operations and records reflecting communications between agency officials and those private associates of the president. On July 2, 2019, American Oversight submitted a further FOIA request to VA seeking all emails sent or received by former Secretary Shulkin on any personal email account regarding agency business. As of the filing of this Complaint, VA has produced records responsive to American Oversight's first two requests that evidenced the existence of further relevant VA records that may be stored within the personal email files of

former Secretary Shulkin, but VA has not completed production of all records responsive to these requests. VA has not produced any records responsive to American Oversight's July 2, 2019 request or otherwise made a determination with respect to that request. Unlawful alienation of records responsive to these FOIA requests thwarts American Oversight's organizational mission and interferes with its rights.

12.     Plaintiff Democracy Forward Foundation is a nonpartisan, non-profit corporation organized under section 501(c)(3) of the Internal Revenue Code and incorporated under the laws of the District of Columbia. Democracy Forward works to promote transparency and accountability in government, in part, by educating the public on government actions and policies, including those taken by Defendants. As part of this work, Democracy Forward regularly uses the FOIA to make requests for records preserved pursuant to the FRA from federal agencies, including VA, and it will continue to seek records from the Department in the future.

13.     On September 3, 2018, Democracy Forward submitted a FOIA request to VA seeking communications between VA officials, including former Secretary Shulkin, and the Mar-a-Lago associates and other records with the potential to shed light on the influence of those associates of the president on VA policies and operations. Later, on July 11, 2019, Democracy Forward submitted a FOIA request to VA seeking all emails sent or received by former Secretary Shulkin on any personal, non-governmental, or nonofficial email account regarding official agency business. As of the filing of this Complaint, VA has produced records responsive to Democracy Forward's September 3, 2018 request, but VA has not completed production of all records responsive to that request. VA has not produced any records responsive to Democracy Forward's July 11, 2019 request or otherwise made a determination with respect to that request. Unlawful alienation of records responsive to these requests thwarts Democracy Forward's

mission and interferes with its rights.[1]

14.     Defendant VA is a federal agency within the meaning of the FRA, 44 U.S.C. § 2901(14), and APA, 5 U.S.C. § 551(1), and is headquartered in Washington, D.C.

15.     Defendant Robert Wilkie is sued in his official capacity as the Secretary of Veterans Affairs. As Secretary of Veterans Affairs, he is the agency head charged with carrying out and performing certain nondiscretionary duties under the FRA. *See, e.g.*, 44 U.S.C. §§ 3101, 3102(1), 3105, 3106.

16.     Defendant NARA is a federal agency within the meaning of the FRA, 44 USC § 2901(14), and APA, 5 U.S.C. § 551(1), and is headquartered in Washington, D.C.

17.     Defendant David S. Ferriero is sued in his official capacity as the Archivist of the United States and is the agency head charged with overseeing the operations of NARA. In his capacity as the Archivist of the United States, he is obligated to perform certain nondiscretionary duties under the FRA. *See, e.g.*, 44 U.S.C. § 3106.

## JURISDICTION AND VENUE

18.     This Court has personal and subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under federal law, specifically the APA, 5 U.S.C. §§ 701, *et seq.*, the FRA 44 U.S.C. §§ 3301, *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

19.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(e).

## LEGAL FRAMEWORK

---

[1] Plaintiffs note relevant FOIA requests they have submitted to VA on this topic to demonstrate the way in which their work is harmed by the violations of the FRA described in this Complaint. Plaintiffs do not, through this action, seek access to the federal records that are the subject of their FOIA requests, and this Complaint does not assert a claim under the FOIA.

20.     The FRA governs the creation, management, and disposal of "records" by federal

agencies. *See generally* 44 U.S.C. Chapters 21, 29, 31 and 33.

21.     "Records" are defined as

all recorded information, regardless of form or characteristics, made or received by
a Federal agency under Federal law or in connection with the transaction of public
business and preserved or appropriate for preservation by that agency or its
legitimate successor as evidence of the organization, functions, policies, decisions,
procedures, operations, or other activities of the United States Government or
because of the informational value of data in them[.]

*Id.* § 3301(a)(1)(A).

22.     As applied to the operations of VA, the FRA imposes duties on both the Secretary

of Veterans Affairs and the Archivist of the United States. To comply with the statute, the

Secretary "shall make and preserve records containing adequate and proper documentation of the

organization, functions, policies, decisions, procedures, and essential transactions of the agency

and designed to furnish the information necessary to protect the legal and financial rights of the

Government and of persons directly affected by the agency's activities."  *Id.* § 3101.

23.     The Secretary is further required to establish a records management program

providing "effective controls over the creation and over the maintenance and use of records," *id.*

§ 3102(1), and to "establish safeguards against the removal or loss of records the head of [the]

agency determines to be necessary and required by regulations of the Archivist," *id.* § 3105.

24.     Pursuant to the FRA, VA has an internal policy that requires use of official email

accounts and prohibits the use of private, non-official email accounts. A VA memorandum, dated

January 2, 2018, specifies that, "VA users may not conduct agency business through the use of

non-official email accounts." VA Memo – VA-19-0568-A-000001, Exhibit B. In alignment with

44 U.S.C. § 2911, the memorandum also states that "if . . . circumstances make use of a non-

official email account unavoidable, the user must: a. Copy the user's official email address . . . or

b. Forward a complete copy of the message to the user's official email address within 20 days of the original transmission." *Id.* A September 21, 2018 VA memorandum similarly maintains that "non-official, electronic messaging accounts will not be used to conduct official VA business transactions." VA Directive 6300(2)(n) (U.S. Dep't of Veterans Affairs Sept. 21, 2018), https://www.va.gov/vapubs/viewPublication.asp?Pub_ID=997&FType=2. In alignment with the FRA, the VA memorandum specifies that, "if a VA employee uses a non-official electronic messaging account, the employee must copy the message to his/her official electronic messaging account when the record is first transmitted, or must forward a complete copy of the record to their official electronic messaging account within 20 days of the record's original creation or transmission pursuant to 44 U.S.C. § 2209." *Id.*

25.     When records are handled in a manner that contravenes the FRA, or a parallel agency record-keeping policy, the FRA obligates the agency head to "notify the Archivist of any actual, impending, or threatened unlawful removal, defacing, alteration, corruption, deletion, erasure, or other destruction of records in the custody of the agency." 44 U.S.C. § 3106(a).

26.     The FRA further dictates that the agency head, with the assistance of the Archivist, "shall initiate action through the Attorney General for the recovery of records" that the agency head "knows or has reason to believe have been unlawfully removed from [the] agency." *Id.*

27.     If the agency head fails to initiate an action for recovery of unlawfully removed records "within a reasonable period of time after being notified of any such unlawful action" the FRA dictates that "the Archivist shall request the Attorney General to initiate such action, and shall notify Congress when such request has been made." *Id.* § 3106(b).

28.     The obligation to initiate an enforcement action through the Attorney General to recover unlawfully removed records is a mandatory obligation that is not subject to agency discretion. *Armstrong v. Bush*, 924 F.2d 282, 294–96 (D.C. Cir. 1991).

29.     Where both the agency head and the Archivist have "failed to initiate remedial action in a timely [manner], private litigants may sue under the APA to require them to do so." *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Homeland Sec.*, 527 F. Supp. 2d 101, 110 (D.D.C. 2007) (internal quotation omitted).

## FACTS

30.     In May and August of 2018, Plaintiff American Oversight submitted FOIA requests to VA seeking, broadly speaking, records with the potential to shed light on whether the Mar-a-Lago associates of President Trump were significantly influencing VA policies, deliberations, and operations while failing to hold formal government positions. These requests sought records reflecting communications of VA officials—including former Secretary Shulkin and former Acting Secretary Peter O'Rourke—with the president's Mar-a-Lago associates concerning VA policies and operations.

31.     In September 2018, Democracy Forward submitted a FOIA request to VA seeking all communications or records of communications between VA officials, including former Secretary Shulkin, and several of President Trump's Mar-a-Lago associates as well as other records with the potential to shed light on the influence of those associates on high-level decision-making at VA.

32.     VA subsequently produced records in response to American Oversight and Democracy Forward's requests that revealed extensive influence at VA by three of President Trump's Mar-a-Lago associates: Marc Sherman, Bruce Moskowitz, and Isaac "Ike" Perlmutter.

*See Mar-a-Lago FOIA Records*, Democracy Forward Foundation (last visited Aug. 6, 2019),
https://democracyforward.org/mar-a-lago-foia-records/; *VA Records Regarding Concerned*
*Veterans of America and the President's Mar-a-Lago Associates*, American Oversight (Feb. 25,
2019), https://www.americanoversight.org/document/va-records-regarding-concerned-veterans-
of-america; *see also* Isaac Arnsdorf, *The Shadow Rulers of the VA*, ProPublica (Aug. 7, 2018,
6:29 PM), https://www.propublica.org/article/ike-perlmutter-bruce-moskowitz-marc-sherman-
shadow-rulers-of-the-va.

33.    The records produced to Plaintiffs indicate that three Mar-a-Lago associates—
Sherman, Moskowitz, and Perlmutter—had consistently communicated with senior VA officials
including former Secretary Shulkin, his chief of staff, and other aides regarding VA policies and
operations.

34.    The records produced to Plaintiffs also indicated that former Secretary Shulkin
repeatedly used a private email account for communications regarding official government
business with Sherman, Moskowitz, and Perlmutter and possibly other individuals in
contravention of VA policy, and failed to copy or forward to his official email account in
violation of the FRA. *See* Exhibit A; *see also* 44 U.S.C. § 2911.

35.    Public reporting further indicates that former Secretary Shulkin created a private
email account specifically for the purpose of communicating with the Mar-a-Lago associates.
Ben Kesling, *House Democrats to Probe How Trump's Associates Influenced the VA,* Wall
Street J. (Feb. 8, 2019, 9:02 AM), https://www.wsj.com/articles/house-democrats-to-probe-how-
trumps-associates-influenced-the-va-11549634520.

36.    Creating or sending federal records from a private account to communicate about
government business violates the FRA unless agency officials either copy their official

government account on the original message, or forward a complete version of the message to their official government account "not later than 20 days after the original creation or transmission of the record." 44 U.S.C. § 2911(a). Records received by Plaintiffs indicate that former Secretary Shulkin failed to comply with that statute and indicate that Secretary Shulkin unlawfully removed federal records from VA through his failure to comply. Exhibit A.

37.     Though VA did retain and produce some records to Plaintiffs that reflect former Secretary Shulkin's use of his private email account to communicate with the Mar-a-Lago associates regarding VA business, only those records that were incidentally forwarded to the official government email account of another VA official have been produced. When former Secretary Shulkin did forward such records from his private account, he forwarded them as components of emails to a subordinate, in which he directed that subordinate to take actions based on the Mar-a-Lago associates' requests and direction. *See* Exhibit A.

38.     By forwarding selected emails to a subordinate as a component of a request for action, former Secretary Shulkin did not remedy his violations of agency policy and the FRA through his use of a personal email account for official correspondence. Instead, the emails he sent to a subordinate requesting action comprised new federal records, and because he failed to either copy his official account in sending those messages, or to subsequently forward them to his official account within 20 days, those emails independently violated the FRA. 44 U.S.C. § 2911(a). And former Secretary Shulkin's use of private email for official business, whether to receive or send emails, violated VA policy. VA Memo – VA-19-0568-A-000001, Exhibit B.

39.     Further, VA's preservation and production only of incidentally forwarded email communications demonstrates that private email communications concerning agency business

that Secretary Shulkin did not incidentally forward to a VA subordinate's official account have been unlawfully removed from VA custody.

40.     Former Secretary Shulkin's noncompliance with 44 U.S.C. § 2911 has resulted in a violation of the FRA and VA's internal FRA compliance policy. By failing to properly transfer relevant records from his personal to his official email accounts, former Secretary Shulkin unlawfully removed records from VA, in violation of both the FRA and VA policy.

41.     On April 23, 2019, Plaintiff Democracy Forward sent a letter to Defendants Secretary Wilkie and VA, carbon copying Defendant David Ferriero at NARA, requesting that Secretary Wilkie take action under the FRA, including by initiating an enforcement action through the Attorney General, to recover emails transmitted by former Secretary Shulkin through a private email account and unlawfully removed from VA's custody. Exhibit C. Democracy Forward requested that VA respond to the letter in writing by June 24, 2019, to confirm that it had acted to notify the Archivist of improper records removal, recover relevant records, and review and reform as necessary the agency's records management policy. *Id.* To the extent that the Secretary failed to take those steps within the aforementioned timeframe, Democracy Forward requested that the Archivist seek to have the Attorney General initiate an enforcement action to recover the federal records described above. *Id.* at 4. As of the filing of this Complaint, Democracy Forward has not received a response to its letter.

42.     Separately, on May 14, 2019, Plaintiff American Oversight sent a letter to Secretary Wilkie and VA, carbon copying Defendant David Ferriero at NARA, providing notice of the evidence of FRA violations revealed by the records of former Secretary Shulkin's personal email use described above and requesting agency action to initiate recovery of records former Secretary Shulkin unlawfully removed through his use of a private email account. Exhibit D.

American Oversight specifically requested that VA notify the Archivist of the improper removal of agency records through improper personal email use and that VA initiate an enforcement action through the Attorney General to recover all such unlawfully removed records. *Id.* American Oversight requested that VA respond to its letter in writing within 60 days to confirm that it had undertaken steps in compliance with its FRA obligation. *Id.* To the extent that the Secretary failed to take those steps within the aforementioned timeframe, American Oversight requested that the Archivist seek to have the Attorney General initiate an enforcement action to recover the federal records described above. *Id.* As of the filing of this Complaint, American Oversight has not received a response to its letter.

43.     VA has demonstrated its recognition of the unremedied, unlawful removal of records by former Secretary Shulkin. In a May 3, 2019 email communication with American Oversight regarding pending FOIA requests, counsel representing VA in a separate FOIA matter stated that the agency intended to send a letter to former Secretary Shulkin regarding American Oversight's concerns that his personal email use resulted in the unlawful removal of federal records.

44.     Counsel for VA later represented that VA had not yet recovered any emails from former Secretary Shulkin's private email account, but that the agency expected it would do so. Shortly thereafter, VA acknowledged that records remained to be recovered from former Secretary Shulkin's private email accounts in a joint status report in litigation related to American Oversight's pending FOIA requests. Joint Status Report, *American Oversight v. U.S. Dep't of Veterans Affairs et al.*, Case No. 18-cv-2463 (D.D.C. June 27, 2019), ECF No. 14 at 3. In that report, VA stated that it "has not yet recovered any potentially responsive email records from Mr. Shulkin's non-official email accounts ***but the agency expects it will do so***." *Id.*

(emphasis added). Defendants VA and Secretary Wilkie have, consequently, acknowledged former Secretary Shulkin's unlawful removal of VA records, and, at a minimum, Defendants have acknowledged there is ample reason to believe that Secretary Shulkin unlawfully removed VA records through improper use of personal email that have not yet been recovered.

45.     Moreover, on information and belief, evidenced by both VA statements referenced above and VA's failure to respond to American Oversight and Democracy Forward's letters of notice, Defendants Secretary Wilkie and VA have failed to take sufficient action to recover and preserve all records documenting communications between former Secretary Shulkin and the Mar-a-Lago associates, or other similar, unlawfully removed federal records, or to initiate an enforcement and recovery action through the Attorney General in a timely manner.

46.     On information and belief, Defendants NARA and Mr. Ferriero have also failed to initiate an enforcement action through the Attorney General for the recovery of emails unlawfully removed from VA as detailed above.

47.     Plaintiffs American Oversight and Democracy Forward are being irreparably harmed by Defendants' failure to take required action. As stated above, Plaintiffs submit FOIA requests to VA as part of their ongoing work and have FOIA requests pending before VA seeking records of communications of former Secretary Shulkin, including communications with the Mar-a-Lago associates. Plaintiffs' ability to use the FOIA to gather agency records, analyze those records, and educate the public about government activities—actions core to Plaintiffs' respective missions—is impeded where, as here, the agency head has failed to carry out its nondiscretionary duty under the FRA to initiate an action through the Attorney General to recover unlawfully removed federal records.

48.     Plaintiffs will continue to be harmed unless and until Defendants Secretary Wilkie and VA provide notice of the unlawfully removed records to the Archivist and initiate an enforcement and recovery action for the records through the Attorney General.

49.     Plaintiffs will also continue to be harmed unless and until Defendants NARA and Mr. Ferriero initiate an enforcement action through the Attorney General for recovery of the unlawfully removed records detailed above.

### CLAIM FOR RELIEF

**Count One**
**(Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*,**
**for declaratory and injunctive relief)**

50.     Plaintiffs repeat and incorporate by reference each of the foregoing allegations as if fully set forth herein.

51.     Communications of agency officials regarding agency business or related to important and contemporaneous details of government affairs qualify as federal records subject to the FRA because they were created "in connection with the transaction of public business and . . . [are] appropriate for preservation by that agency . . . as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the United States government." *See* 44 U.S.C. § 3105.

52.     Federal records may only be alienated or destroyed through the careful process set forth in the FRA. *See* 44 U.S.C. §§ 3301-3314 (setting forth the steps for lawfully disposing of records).

53.     The failure of agency officials to properly preserve communications that comprise official agency business—such as by failing to transfer emails from private accounts to official

accounts as required by 44 U.S.C. § 2911 and VA policy—amounts to removal of agency records from the agency itself and violates the FRA.

54.     Where, as here, this violation is known to VA, the Secretary has a nondiscretionary duty under the FRA to report the violation to the Archivist and to initiate an enforcement action through the Attorney General so that the alienated records can be recovered.

55.     Defendants Secretary Wilkie and VA have failed to perform their nondiscretionary duty to recover the unlawfully removed VA records.

56.     Defendants Secretary Wilkie and VA have failed to perform their nondiscretionary duty to notify the Archivist of the above-described known FRA violations.

57.     Defendants Secretary Wilkie and VA have failed to perform their nondiscretionary duty to initiate an action through the Attorney General to recover the unlawfully removed records.

58.     This failure to act constitutes a final agency action for which there is no other adequate remedy in a court of law. Moreover, it is an agency action unlawfully withheld or unreasonably delayed, and is also arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. 5 U.S.C. § 706.

## Count Two
### (Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*, for declaratory and injunctive relief)

59.     Defendants NARA and Mr. Ferriero have an independent nondiscretionary duty under the FRA to initiate a recovery action through the Attorney General when the agency head fails to do so.

60.     Defendants NARA and Mr. Ferriero have been made aware of the unlawfully alienated VA records, and of Secretary Wilkie's failure to take appropriate action to recover

those records. However, Defendant Mr. Ferriero has also failed to act. Accordingly, Defendants

NARA and Mr. Ferriero are in default of their nondiscretionary obligations under the FRA.

61.     This failure to act is a final agency action for which there is no other adequate

remedy in a court of law. Moreover, it is an agency action unlawfully withheld or unreasonably

delayed, and is also arbitrary, capricious, an abuse of discretion, and otherwise not in accordance

with law. 5 U.S.C. § 706.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

1.     Declare that emails sent and received by VA officials on private email accounts in

the course of conducting agency business are agency records subject to the FRA;

2.     Declare that the failure to ensure such communications are preserved, as required

by 44 U.S.C. § 2911 and VA policy, comprises an unlawful removal of federal records in

violation of the FRA;

3.     Declare that Defendants have violated their respective duties under the FRA and

APA;

4.     Order Defendants to comply with their respective duties under the FRA and APA,

including by referring the matter to the Attorney General for enforcement of the FRA and

recovery of unlawfully removed records containing former Secretary Shulkin's communications

on non-official electronic messaging accounts;

5.     Grant Plaintiffs an award of attorneys' fees and other litigation costs reasonably

incurred in this action; and

6.     Grant Plaintiffs any other relief this Court deems appropriate.

18

Dated: August 21, 2019                    Respectfully submitted,


                                          */s/ Daniel A. McGrath*
                                          Daniel A. McGrath
                                          D.C. Bar No. 1531723
                                          John E. Bies
                                          D.C. Bar No. 483730

                                          AMERICAN OVERSIGHT
                                          1030 15th Street NW, B255
                                          Washington, D.C. 20005
                                          (202) 897-4213
                                          daniel.mcgrath@americanoversight.org
                                          john.bies@americanoversight.org

                                          Benjamin Seel
                                          D.C. Bar No. 1035286
                                          Javier Guzman
                                          D.C. Bar No. 462679

                                          DEMOCRACY FORWARD FOUNDATION
                                          P.O. Box 34553
                                          Washington, D.C. 200043
                                          (202) 448-9090
                                          bseel@democracyforward.org
                                          jguzman@democracyforward.org

                                          *Counsel for Plaintiffs*

# EXHIBIT A

**To:** Blackburn, Scott R.[Scott.Blackburn@va.gov]
[EXTERNAL] Fwd: Contact review (2).msg -extracted- for Printed Item: 215 ( Attachment 2 of 27)
**From:** David Shulkin Case 1:19-cv-02519-RDM   Document 1   Filed 08/21/19   Page 21 of 42
**Sent:** Sun 3/11/2018 4:31:54 PM
**Subject:** [EXTERNAL] Fwd: Contact review

Scott lets discuss tommorow

Sent from my iPhone

Begin forwarded message:

**From:** David Shulkin (b)(6) @gmail.com>
**Date:** March 11, 2018 at 12:31:22 PM EDT
**To:** Bruce Moskowitz (b)(6) @mac.com>
**Cc:** IP (b)(6) @frenchangel59.com>, (b)(6) @gmail.com, (b)(6) @gmail.com
**Subject: Re: Contact review**


Great list

Is leslie cooper from mayo- i could not find him or her

Sent from my iPhone

On Mar 11, 2018, at 11:02 AM, Bruce Moskowitz (b)(6) @mac.com> wrote:


These are the individuals to review the contract;

Stephanie Reel CIO- hopkins

Stan Huff CIO- intermiuntain

Jonathan ManisCIO- suttrr

Andrew Karson MD.- partners

Leslie Cooper M.D.

Clifford Ko M.D.- american college surgeons

Sent from my iPad

Bruce Moskowitz M.D.

| | |
|---|---|
| **From:** | David Shulkin |
| **To:** | Blackburn, Scott R. |
| **Subject:** | [EXTERNAL] Fwd: Call with Secretary Shulkin |
| **Date:** | Sunday, March 11, 2018 5:55:30 PM |

Can you join me at morning report in the am-  8 or 815 am to discuss next steps on this

Note the emails below

Sent from my iPhone

Begin forwarded message:

**From:** Bruce Moskowitz <(b)(6)              @mac.com>
**Date:** March 11, 2018 at 12:57:53 PM EDT
**To:** Stephanie Reel <(b)(6) @jhu.edu>, (b)(6)          @imail.org,
(b)(6)          @sutterhealth.org, (b)(6)@facs.org" <(b)(6)@facs.org>,
(b)(6)                @mayo.edu, "Karson, Andrew Scott, M. D."
<(b)(6)          @mgh.harvard.edu>
**Cc:** David Shulkin <(b)(6)          @gmail.com>, IP (b)(@frenchangel59.com>,
(b)(6)          @gmail.com (b)(6)          @gmail.com, (b)(6)          @reagan.com
**Subject: Call with Secretary Shulkin**


The Secretary will send out an email to set up a conference call to discuss the
review of the EMR contract for the VA. This has tremendous importance not just
for the VA, but setting a standard for interoperability for the nation and also EMR
innovation. I want to take the opportunity to thank everyone for their service to
the Veterans and advancing health care for the nation

Sent from my iPhone

| | |
|---|---|
| **From:** | David Shulkin |
| **To:** | Blackburn, Scott R. |
| **Subject:** | [EXTERNAL] Fwd: Contact review |
| **Date:** | Monday, March 12, 2018 4:19:03 PM |

Can we get them the nda as well?

Sent from my iPhone

Begin forwarded message:

> **From:** IP <(b)(6)@frenchangel59.com>
> **Date:** March 12, 2018 at 2:50:52 PM EDT
> **To:** David Shulkin <(b)(6)@gmail.com>
> **Cc:** (b)(6)@gmail.com" <(b)(6)@gmail.com>,
> (b)(6)@gmail.com" <(b)(6)@gmail.com>, Bruce Moskowitz
> (b)(6)@mac.com>
> **Subject: RE: Contact review**
>
>
> David,
>
> How quick can you send the NDA to the people?
>
> And why not send it to Bruce, Marc and myself so we can work around the clock
> to finish this?
>
> Thank you.
>
> -----Original Message-----
> From: Bruce Moskowitz [(b)(6)@mac.com]
> Sent: Monday, March 12, 2018 2:03 PM
> To: David Shulkin <(b)(6)@gmail.com>
> Cc: IP <(b)@frenchangel59.com>(b)(6)@gmail.com;
> (b)(6)@gmail.com
> Subject: Re: Contact review
>
> The following may be discussed on the review however if not, we need to be sure
> there is a platform for the planned device registry.
> Separately there needs to be the ability to insert a mental health tracker,
> nutritional tracker and wellness tracker. We do not want to find out there is add on
> charges for these essential elements of the EMR.
> It also needs to be worked out how mental health records, treatments and
> appointments do not fall through the cracks during this lengthy implementation.
>  The head of Columbia Psychiatry will Dr. Lieberman can assist with this aspect.
> Thank you.
>
> Sent from my iPad
> Bruce Moskowitz M.D.

**From:**     David Shulkin
**To:**       Blackburn, Scott R.
**Subject:**  [EXTERNAL] Fwd: EMR
**Date:**     Tuesday, March 06, 2018 7:10:27 AM

Can we begin to address and then ill respond back?

Sent from my iPhone

Begin forwarded message:

> **From:** Bruce Moskowitz <(b)(6)           @mac.com>
> **Date:** March 5, 2018 at 6:49:58 AM EST
> **To:** (b)(6)        @gmail.com, (b)(6)        @reagan.com
> **Cc:** (b)(6)        @gmail.com, IP (b)(@frenchangel59.com>,
> (b)(6)        @gmail.com
> **Subject: EMR**
>
>
> I would like to underscore the importance of getting the "Cloud"correctly and the
> other four issues with the new CIO's.  Also the composition of the physician input
> has to change immediately so that the EMR is patient centric and usable from the
> physician perspective.
> Second this is going to take years to implement and especially in mental health we
> need a portable EMR solution that works with  the DOD, the VA and the private
> sector. No one at the VA got back to me on what the Apple project can and can
> not do in terms of solving this problem.
>
> Sent from my iPad
> Bruce Moskowitz M.D.

# EXHIBIT B

**Department of
Veterans Affairs**

# Memorandum

**Date:** JAN - 2 2018

**From:** Deputy Secretary (001)

**Subj:** Proper Use of Email and Other Messaging Services

**To:** Under Secretaries, Assistant Secretaries, and Other Key Officials

1. This memorandum and its attachment supersede the attached memorandum dated April 24, 2015, and are intended to advise all VA personnel, including employees, contractors, trainees, and volunteers, that the use of non-official accounts or devices to conduct official agency business is prohibited.

2. VA records, including those generated by electronic communications, must remain within a secure VA information system, be managed in accordance with the applicable records management requirements, and employ, if appropriate, VA-approved encryption. Records are defined by the Federal Records Act as "all recorded information . . . made or received by a Federal agency . . . in connection with the transaction of public business and appropriate for preservation by that agency . . . as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the . . . Government or because of the informational value of the data in them." 44 United States Code § 3301(a)(1)(A).

3. To ensure proper preservation of records generated by email, VA users conducting agency business must use, whenever feasible, official email accounts, such as an email address with @va.gov as the domain name. VA users may not conduct agency business through the use of non-official email accounts, such as Gmail or Yahoo. If, however, circumstances make use of a non-official email account unavoidable, the user must:

   a. Copy the user's official email address so that the message is sent simultaneously to the official account at the moment of transmission; or

   b. Forward a complete copy of the message to the user's official email address within 20 days of the original transmission.

4. Contractors conducting VA business who are assigned VA email accounts will use those accounts to transmit emails that meet the definition of a Federal Record ("record emails"). If a contractor is unable to use the VA email account due to technical constraints, the corporate email account may be used if at least one of the following requirements is met:

   a. The record emails contain no Controlled Unclassified Information or other VA sensitive information, or are protected by encryption compliant with the standards established by the National Institute of Standards and

VA-19-0568-A-000001

Page 2.

Proper Use of Email and Other Messaging Services

> Technology (NIST) in Federal Information Processing Standards Publication 140-2, Security Requirements for Cryptographic Modules; or

b. The contractor has implemented basic safeguards as outlined in 48 Code of Federal Regulations (C.F.R.) § 52.204-21 and the recommended security requirements in NIST Special Publication (SP) 800-171, Protecting Controlled Unclassified Information in Nonfederal Information Systems and Organizations.

5. If any record emails are transmitted using a corporate email account, the contractor must also comply with all applicable records management laws, including National Archives and Records Administration (NARA) regulations and VA policies and procedures. As such, the contractor must copy any record email to a VA email system or VA record-keeping system within 20 days by simultaneously sending a copy to a VA email account or forwarding the message to a VA email account within that time frame. To ensure contractor compliance, VA shall insert the clause at 48 C.F.R. § 52.204-21, Basic Safeguarding of Covered Contractor Information Systems, and appropriate records management language in solicitations and contracts.

6. Instant messages (IM) sent or received by VA personnel using Microsoft Lync or Skype for Business are generally retained in a VA system. For many VA users, IMs are not retained beyond the conclusion of the conversation. Since information transmitted by IM may not be properly preserved, VA personnel should not use IMs to conduct communications that are likely to generate VA records. To the extent that record material is created using IM, the content must be copied to a recordkeeping system to ensure proper preservation.

7. Short Message Service (SMS) messages, also known as text messages, sent or received by VA personnel using a iPhone, Blackberry, or other mobile device, whether VA-issued or personally owned, are not retained on any VA system. Rather, the information resides with the service provider, such as Verizon or AT&T, on their networks and on the mobile device in the user's possession. Since the information transmitted by SMS is arguably outside VA custody, VA personnel should not use SMS to conduct communications that are likely to generate record material. To the extent that VA records are created using SMS, the content must be copied to a recordkeeping system to ensure proper preservation.

Page 3.

Proper Use of Email and Other Messaging Services

8.  Attached is guidance to be distributed to the appropriate personnel in your Administration or Staff Office so that you may make them aware of these requirements.  Gi-Hyun An is available at (202) 461-7684 to address any questions concerning this memorandum.

Thomas G. Bowman

Attachment

VA-19-0568-A-000003

# EXHIBIT C



**Via Certified Mail**

April 23, 2019

The Honorable Robert Wilkie
Secretary of Veterans Affairs
U.S. Department of Veterans Affairs
810 Vermont Ave. NW
Washington, DC 20420

Re:    **Request for Action Under the Federal Records Act to Recover Former Secretary Shulkin's Work Emails Maintained on a Personal Email System**

Dear Secretary Wilkie:

Recent reporting indicates that, when he served as Secretary of Veterans Affairs, David Shulkin created and used a private, non-governmental email address to engage in what he called "secure" communications about government business with a group of outside advisors.[1] Under the Federal Records Act, the Department of Veterans Affairs must take steps to recover and preserve those communications. We ask that you confirm that the Department has done so by June 24, 2019.

*Factual Background*

The role of Ike Perlmutter, Bruce Moskowitz, and Marc Sherman in advising the VA has been well documented, including by an August 2018 exposé in *Pro Publica*.[2] That initial reporting described the so-called Mar-a-Lago Crowd's ties to President Trump through the private Mar-a-Lago Club, and their privileged access and influence at the VA. Documents on which that reporting relied confirm that the Crowd used their own, private email addresses to conduct their business with the VA.[3] Since that time, it has come to light that Secretary Shulkin *also* used private, non-governmental email to communicate with the Crowd, including an address

---

[1] Ben Kesling, *House Democrats to Probe How Trump's Associates Influenced the VA*, Wall St. J., Feb. 8, 2019, https://www.wsj.com/articles/house-democrats-to-probe-how-trumps-associates-influenced-the-va-11549634520.

[2] *See* Isaac Arnsdorf, *The Shadow Rulers of the VA*, Pro Publica, Aug. 7, 2018, https://www.propublica.org/article/ike-perlmutter-bruce-moskowitz-marc-sherman-shadow-rulers-of-the-va.

[3] *See, e.g.*, *The Mar-a-Lago Crowd Documents*, ProPublica, at DS-Moskowitz 1 Att 2-3_Redacted 3, https://www.propublica.org/datastore/dataset/the-mar-a-lago-crowd-documents.

that he specifically established for that purpose.[4] As the *Wall Street Journal* reported on February 8, 2019, Secretary Shulkin informed the Mar-a-Lago Crowd and other VA officials in an email that he had "set up a new email address just for our secure communication on issues in the future."[5] On occasions thereafter, the Crowd "communicated with then-VA Secretary Dr. David Shulkin through the use of private email accounts."[6]

This reporting raises new concerns about what the public record already demonstrated: that the Mar-a-Lago Crowd repeatedly advised VA officials, including Secretary Shulkin, regarding official VA business.[7] The Mar-a-Lago Crowd discussed and advised VA officials on, among other things, personnel and staffing issues; veteran suicide prevention programming; development of a mobile platform by which veterans could access medical services and records; development of a national medical device registry; the VA's multi-billion dollar, no-bid contract with the Cerner Corporation to revamp its digital medical records system; and the privatization of certain essential health services currently provided to veterans directly by the VA.[8] The limited picture into the relationship between Secretary Shulkin and the Crowd that is currently publicly available confirms that Secretary Shulkin communicated primarily, if not exclusively, with the Crowd about VA business, including from a private email address.[9] Accordingly, communications between Secretary Shulkin and the Crowd not already in the public domain most likely also pertain to work-related matters.

As explained below, because they concern the VA's affairs, Secretary Shulkin's communications with the Mar-a-Lago Crowd fall within the ambit of the Federal Records Act. Accordingly, all communications between Secretary Shulkin and the Mar-a-Lago Crowd must be preserved regardless of whether they occurred on governmental or non-governmental email systems.

### *The VA's Obligations Under the Federal Records Act*

The Federal Records Act (the "FRA"), 44 U.S.C. §§ 3101 *et seq.*, requires executive agencies to make and preserve federal records. Under the Act, "records" that must be preserved

---

[4] Kesling, *supra* note 1 (reporting that the Mar-a-Lago Crowd "communicated with then-VA Secretary Dr. David Shulkin through the use of private email accounts, an arrangement set up by Dr. Shulkin"); *see, e.g.*, U.S. Dep't of Veterans Affairs, FOIA Service, Senior Leadership Emails/Travel, DSTBCSto62218Redacted at 0591, https://www.oprm.va.gov/docs/foia/DSTBCSto62218Redacted.PDF (containing partially redacted emails being sent from and received by a David Shulkin aol.com email address).

[5] Kesling, *supra* note 1.

[6] *Id.*

[7] *See* Arnsdorf, *supra* note 2; *see also* First Am. Compl. at 20-36, *Vote Vets Action Fund v. U.S. Dep't Veterans Affairs*, No. 18-cv-1925 at 20-36 (D.D.C. Dec. 6, 2018), ECF No. 10 (collecting examples of issues on which the Mar-a-Lago Crowd advised VA officials, including Secretary Shulkin). Democracy Forward Foundation represents Vote Vets Action Fund in that action.

[8] *See* Arnsdorf, *supra* note 2.

[9] *See* Senior Leadership Emails/Travel, *supra* note 4, DSTBCSto62218Redacted at 0591 (using a private email address to discuss a partnership with Apple for purposes of developing various healthcare information technology applications for the Department).

"include[] all recorded information . . . made or received by a Federal agency . . . in connection with the transaction of public business and preserved or appropriate for preservation by that agency . . . as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the United States Government."[10] Once federal records have been created, the FRA "strictly limits the circumstances under which [they] can be removed from federal custody or destroyed."[11]

Applying these principles in the circumstances present here, courts have repeatedly held that "[w]ork-related emails" that have been "created and received . . . on . . . personal email account[s]" by federal employees "constitute federal records, which by law should remain in the custody of the federal government."[12] Under the FRA, "[w]hen the head of a federal agency 'knows or has reason to believe' that [such emails] 'have been unlawfully removed' from agency custody"—for example, by being maintained on a personal, non-governmental email system—the agency head "has a duty to 'initiate action through the Attorney General for the recovery of [the emails].'"[13] "If the agency head fails to do so 'within a reasonable period of time,' the Archivist must do the same."[14]

Secretary Shulkin's communications with the Mar-a-Lago Crowd are federal records under the FRA. They were "made or received by [the VA] . . . in connection with the transaction of public business and . . . appropriate for preservation by [the VA] . . . as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the United States Government."[15] Specifically, they comprise and document the advice that the Mar-a-Lago Crowd has provided to the VA on topics ranging from the privatization of VA services to agency initiatives to prevent veteran suicide. Yet while some portion of these communications transpired over the VA's email system, Secretary Shulkin created and used a personal email account for other communications with the Mar-a-Lago Crowd, apparently to shield them from

---

[10] 44 U.S.C. § 3301(a)(1)(A).

[11] *Jud. Watch, Inc. v. Kerry*, 844 F.3d 952, 953 (D.C. Cir. 2016) (citing 44 U.S.C. § 3105(1)); *see* 44 U.S.C. § 3105. Except in certain emergency situations not relevant here, the FRA requires that certain steps be followed before federal records can be lawfully disposed. *See* 44 U.S.C. §§ 3301-3314 (setting forth the steps for lawfully disposing of records in various circumstances). These procedural steps are meant to achieve a methodical and orderly disposition of federal records. *See id.*

[12] *Cause of Action Inst. v. Tillerson*, 285 F. Supp. 3d 201, 203 (D.D.C. 2018) (citing 44 U.S.C. § 3301); *see, e.g.*, *Cause of Action Inst. v. Pompeo*, 319 F. Supp. 3d 230, 232 (D.D.C. 2018) ("Under the Federal Records Act and accompanying regulations, work-related emails that Secretary Powell exchanged on a personal email account constitute federal records." (citations omitted)). VA guidance states that "[n]on-official, electronic messaging accounts will not be used to conduct official VA business transactions," but addresses steps VA employees must take when such usage occurs to ensure the records' preservation. U.S. Dep't Veterans Affairs, VA Directive 6300: Records and Information Management at 14 (September 21, 2018), https://www.va.gov/vhapublications/ViewPublication.asp?pub_ID=8113; *see also* U.S. National Archives and Records Administration, Guidance on Managing Electronic Messages, Bulletin 2015-02 (July 29, 2015), https://www.archives.gov/records-mgmt/bulletins/2015/2015-02.html.

[13] *Cause of Action Inst. v. Pompeo*, 319 F. Supp. 3d at 232 (citing 44 U.S.C. § 3106(a)).

[14] *Id.* (citing 44 U.S.C. § 3106(b)).

[15] 44 U.S.C. § 3301(a)(1)(A).

view.[16] Those communications may have been made entirely outside the VA's email system and therefore may have been unlawfully removed from governmental custody.

Accordingly, in order to fulfill its obligations under the FRA, the VA must:

(i)    notify the Archivist of the United States of any and all instances where federal records created or received by Secretary Shulkin were removed from governmental custody, *see* 44 U.S.C. § 3106(a);

(ii)    retrieve from Secretary Shulkin's custody any and all federal records stored on private accounts and ensure their proper preservation under the FRA, including, as necessary, by referring the potential unlawful alienation of federal records by Secretary Shulkin to the Attorney General for the purpose of initiating an enforcement action, *see id.*; and

(iii)    review the VA's records management policy, identify any shortcomings, and make any necessary revisions, *see id.* §§ 3101, 3102(1).

We respectfully request that the VA respond to this letter in writing by June 24, 2019, to confirm that it has undertaken these steps. To the extent the VA fails to take these steps, we respectfully request that the Archivist fulfill his statutory obligation to request that the Attorney General initiate an enforcement action to recover the records and seek other appropriate redress. *See id.* § 3106(b).

Sincerely,

*/s/ Anne Harkavy*

Anne Harkavy
Executive Director
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043

Cc:

James Byrne
General Counsel, U.S. Department of Veterans Affairs
810 Vermont Ave. NW
Washington, DC 20420

David Ferriero
Archivist, National Archives and Records Administration
8601 Adelphi Rd.
College Park, MD 20740

---

[16] *See supra* notes 3, 5. As with emails between Secretary Shulkin and the Mar-a-Lago Crowd, the Department's obligations under the FRA apply with equal force to communications made by alternative methods, such as SMS text applications, Blackberry Messenger, What's App, iMessage, and social media direct messaging.

# EXHIBIT D

May 14, 2019

**VIA CERTIFIED MAIL**

Secretary Robert Wilkie
U.S. Department of Veterans Affairs
810 Vermont Ave., NW
Washington, DC 20420

Dear Secretary Wilkie,

American Oversight writes to inform you that we have discovered evidence that federal records of the Department of Veterans Affairs ("VA") appear to have been unlawfully removed from the VA's custody in violation of the Federal Records Act, 44 U.S.C. §§ 3101 *et seq.*, and to request that you take action to recover these records. Specifically, VA produced records in response to Freedom of Information Act ("FOIA") requests submitted by American Oversight that show senior VA officials, including former Secretary David Shulkin, used personal electronic messaging accounts to communicate with private individuals—including associates of the president—regarding agency business and appear to have failed to follow proper procedures for transferring those records to agency custody.

As described in greater detail below, the evidence contained in records VA has produced to American Oversight alone give you clear "reason to believe [records] have been unlawfully removed" from VA's custody, and you are required to initiate action for the recovery of those federal records. 44 U.S.C. § 3106.

*Background*

In May and August of 2018, American Oversight submitted FOIA requests to VA seeking to shed light on whether associates of President Trump from his Mar-a-Lago club—including Isaac "Ike" Perlmutter, Marc Sherman, and Bruce Moskowitz—were improperly influencing VA policies while not formally holding any government positions.[1] The records VA subsequently produced in response to these requests have revealed the powerful influence the president's Mar-a-Lago associates have exercised over VA by consistently communicating directly with senior officials

---

[1] *See* Arthur Allen, *'Who the Hell Is This Person?' Trump Mar-a-Lago Pal Stymies VA Project*, POLITICO (Apr. 30, 2018, 5:01 AM), https://www.politico.com/story/2018/04/30/trump-doctor-health-technology-508297; Isaac Arnsdorf, *The Shadow Rulers of the VA*, PROPUBLICA (Aug. 7, 2018, 6:29 PM), https://www.propublica.org/article/ike-perlmutter-bruce-moskowitz-marc-sherman-shadow-rulers-of-the-va; *FOIA to VA Seeking Communications with Outside Influences at the Agency*, American Oversight, May 4, 2018, https://www.americanoversight.org/document/foia-to-va-seeking-communications-with-outside-influences-at-the-agency.

regarding important policy matters.[2] This influence has been a matter of great concern to the public and congressional committees.[3] In part, public concerns have arisen because these individuals (none of whom are officially employed by VA) are not subject to the ethics requirements, hiring standards, or public scrutiny that government officials face—including the transparency that results from being subject to the Freedom of Information Act.

These concerns of improper influence are compounded by the prospect that the full sway these private individuals have had over the nation's veterans' policy may be hidden from the public's view as a result of VA officials' impermissible use of personal email accounts to conduct agency business. Such problematic record-keeping practices could prevent the public and Congress from gaining transparency into VA communications with these individuals or understanding the scope of their influence on VA policy. Unfortunately, documents produced by the VA to American Oversight indicate that senior VA officials, including former Secretary Shulkin, likely communicated with private individuals about agency business on private channels. The records produced by the VA show that former Secretary Shulkin received multiple emails to his personal Gmail account from the president's Mar-a-Lago associates regarding official government business, including policies related to the provision of healthcare to our nation's veterans,[4] and the records also suggest other officials may also have used personal electronic messaging accounts to communicate with these individuals. *See* Exhibits A & B. Moreover, there is ample reason to believe that these few documents do not capture the full extent of the emails between the Mar-a-Lago associates and high-ranking VA officials.

---

[2] *See* Arnsdorf, *supra* note 1; *VA Records Regarding Concerned Veterans of America and the President's Mar-a-Lago Associates,* AMERICAN OVERSIGHT (Feb. 25, 2019), https://www.americanoversight.org/document/va-records-regarding-concerned-veterans-of-america.

[3] Arthur Allen, *Takano Opens Probe Into Mar-a-Lago Influence at VA,* POLITICO (Feb. 8, 2019, 12:22 PM), https://www.politico.com/story/2019/02/08/mar-a-lago-veterans-takano-1159355; Press Release, *Chairman Takano: VA's Failure to Meet Deadline, Provide Documents in Mar-A-Lago Investigation Demonstrates "Lack of Good Faith Effort,"* Feb. 26, 2019, https://veterans.house.gov/news/press-releases/chairman-takano-va-s-failure-meet-deadline-provide-documents-mar-lago; Letter from Rep. Elijah Cummings, then-Ranking Member of the House of Representatives Committee on Oversight and Government Reform, to Robert Wilkie, Secretary of the Department of Veterans Affairs, Aug. 14, 2018, https://oversight.house.gov/sites/democrats.oversight.house.gov/files/documents/2018-08-14.EEC%20to%20Wilkie-VA%20re%20improper%20influence%20doc%20and%20briefing%20request.pdf; Arnsdorf, *supra* note 1; Anne Harkavy & Will Fischer, *Are Mar-a-Lago Cronies Running VA? Secretary Wilkie Owes Answers to Veterans, Voters,* USA TODAY (Dec. 19, 2018, 8:15 AM), https://www.usatoday.com/story/opinion/2018/12/19/veterans-affairs-secretary-wilkie-owes-answers-secret-mar-lago-council-column/2350956002/.

[4] The relevant FOIA requests form the basis of the ongoing matter *American Oversight v. U.S. Dep't of Veterans Affairs et al.,* Case No. 18-cv-2463 (KBJ) (D.D.C. filed Oct. 25, 2018).

*Secretary Shulkin's Use of Personal Email to Communicate with Associates of the President*

The email records American Oversight has received from VA show that former Secretary Shulkin appears to have shared his personal Gmail account email address with the president's associates—including, at least, Mr. Moskowitz and Mr. Perlmutter—as Shulkin received email communications regarding VA agency business through this personal email account. *See* Exhibit A. The use of non-official electronic messaging accounts for communicating about VA business violates VA's current records management policy.[5]  As can be seen in the excerpt re-produced below, and in this and other messages attached in Exhibit A, Secretary Shulkin received email messages related to agency business to his Gmail account from both Mr. Moskowitz and Mr. Perlmutter.



| From: | David Shulkin |
| To: | Blackburn, Scott R. |
| Subject: | [EXTERNAL] Fwd: Contact review |
| Date: | Monday, March 12, 2018 4:19:03 PM |

Can we get them the nda as well?

Sent from my iPhone

Begin forwarded message:

> **From:** IP <(b)(6)@frenchangel59.com>
> **Date:** March 12, 2018 at 2:50:52 PM EDT
> **To:** David Shulkin <(b)(6)@gmail.com>
> **Cc:** (b)(6)@gmail.com" <(b)(6)@gmail.com>,
> (b)(6)@gmail.com" <(b)(6)@gmail.com>, Bruce Moskowitz
> (b)(6)@mac.com>
> **Subject: RE: Contact review**
>
> David,
>
> How quick can you send the NDA to the people?
>
> And why not send it to Bruce, Marc and myself so we can work around the clock to finish this?
>
> Thank you.
>
> -----Original Message-----
> From: Bruce Moskowitz [(b)(6)@mac.com]
> Sent: Monday, March 12, 2018 2:03 PM
> To: David Shulkin <(b)(6)@gmail.com>
> Cc: IP <(b)(6)@frenchangel59.com> (b)(6)@gmail.com;
> (b)(6)@gmail.com
> Subject: Re: Contact review
>
> The following may be discussed on the review however if not, we need to be sure there is a platform for the planned device registry.
> Separately there needs to be the ability to insert a mental health tracker, nutritional tracker and wellness tracker. We do not want to find out there is add on charges for these essential elements of the EMR.
> It also needs to be worked out how mental health records, treatments and

---

[5] DEP'T OF VETERANS AFFAIRS, VA Directive 6300, Records and Information Management, Sept. 21, 2018, at 7, https://www.va.gov/vhapublications/ViewPublication.asp?pub_ID=8113 ("Non-official, electronic messaging accounts will not be used to conduct official VA business transactions."). Although the current policy was not yet published at the time of the email messages contained in Exhibit A, VA has represented to American Oversight that its electronic messaging policy obviated the need to search former Secretary Shulkin's personal email accounts.

VA policy and federal law further require that emails concerning official business on non-official accounts must copy the officer or employee's official account or be forwarded to the officer or employee's official account with 20 days.[6] The records produced to American Oversight show that Secretary Shulkin apparently failed to follow this policy or comply with the requirements of 44 U.S.C. § 2911. VA has produced no records showing Mr. Shulkin forwarding the emails in Exhibit A, or any others from his personal account, to his official account. But such records would be responsive to American Oversight's FOIA requests and presumably would have been located and produced if they existed. The emails VA has produced instead show that Mr. Shulkin appears to have, on occasion, merely incidentally forwarded some emails from the president's Mar-a-Lago associates from his personal email account to a subordinate VA official in order to request that his subordinate act upon their requests. These forwarded emails also appear to demonstrate independent violations of federal law, as Secretary Shulkin created additional federal records using a non-official email account by sending messages directing his subordinate to take action from his personal Gmail account while failing to copy his official account or forward the messages to that account. 44 U.S.C. § 2911.

Although these incidentally forwarded emails have been retained by VA and produced in response to FOIA requests, Secretary Shulkin's failure to comply with VA policy and federal law by failing to copy his official account or forward messages to his official account strongly suggests that there are other messages that were not forwarded to a VA records system, as any message that did not require forwarding to a subordinate for action would not have been transferred to VA custody for retention or transparency through release under FOIA.[7] The content of the messages, moreover, indicates that Secretary Shulkin almost certainly sent messages regarding agency business from his personal account to the Mar-a-Lago associates. In one message, below, Secretary Shulkin noted that he would "respond back" to Mr. Moskowitz's email to his personal account. *See* Exhibit A at 4.

| | |
|---|---|
| **From:** | David Shulkin |
| **To:** | Blackburn, Scott R. |
| **Subject:** | [EXTERNAL] Fwd: EMR |
| **Date:** | Tuesday, March 06, 2018 7:10:27 AM |

Can we begin to address and then ill respond back?

Sent from my iPhone

Begin forwarded message:

**From:** Bruce Moskowitz <[b)(6]            @mac.com>

---

[6] *Id.* ("If a VA employee uses a non-official electronic messaging account, the employee must copy the message to his/her official electronic messaging account when the record is first transmitted, or must forward a complete copy of the record to their official electronic messaging account within 20 days"); 44 U.S.C. § 2911.

[7] Secretary Shulkin's failure to forward the messages to his official email account also creates a substantial recordkeeping problem even for those messages that, by happenstance, were forwarded to another VA employee's official account, because those messages would be unlikely to be found if Congress or a FOIA requester were to seek records specifically involving Mr. Shulkin, as the messages would not be located in his official email account.

This evidence strongly suggests that former Secretary Shulkin has personal email account messages regarding agency business with Mr. Moskowitz and Mr. Perlmutter—and perhaps other individuals—that have not been transferred to the custody of VA to be retained as federal records in compliance with VA policy and the Federal Records Act. American Oversight raised these concerns with VA's counsel in the course of the matter *American Oversight v. U.S. Dep't of Veterans Affairs et al.*, Case No. 18-cv-2463 (KBJ), and requested that VA take steps to search for responsive personal email messages. VA responded that its policy requiring that an officer copy or forward agency records on personal accounts to the officer's official email account obviated the need to conduct a further search of for personal emails despite the evidence American Oversight cited demonstrating Secretary Shulkin's failure to follow this policy.[8]

American Oversight urges you to initiate action—including, if necessary, through the Attorney General—in accord with your obligations under the Federal Records Act, 44 U.S.C. § 3106(a), to recover and preserve all federal records within former Secretary Shulkin's personal email accounts.

## *Other VA Officials' Use of Personal Accounts to Communicate with the President's Associates*

Another record VA produced to American Oversight suggests that other VA officials subordinate to Secretary Shulkin, including former Chief of Staff and Acting Secretary Peter O'Rourke, may have also used personal electronic messaging accounts to communicate with the president's Mar-a-Lago associates regarding official VA business.

In an email VA produced to American Oversight, attached as Exhibit B and partially re-produced below, then-Chief of Staff O'Rourke provided Mr. Perlmutter, Mr. Sherman, and Mr. Moskowitz with his "Personal email" address and his "Personal cell" number.

---

From: COS-PMO
Sent: Wednesday, February 28, 2018 3:37:19 AM
To: (b) (6) ; ip; mbsherman; brucemoskowitzmd
Subject: Contact information

All,

It was an honor to meet you all yesterday.  I want to ensure that you have my VA and personal contact information.

VA cell: 202-823-(b) (6)
Personal cell: 202-997-(b) (6)
Direct VA email: CoS-PMO@va.gov
Personal email: (b) (6)

I will protect our conversations from yesterday and as instructed by the Secretary last night, not discuss the content with any of the individuals what were mentioned.

Thank you for your support of the President, the VA, and me as we work to make the VA great.

Pete

---

[8] After American Oversight raised this issue repeatedly, VA's counsel represented that VA would send a letter to former Secretary Shulkin to gain "clarity" on this matter.

Mr. O'Rourke's provision of this information alone plainly gives reason to believe that he also likely used personal accounts to communicate with these individuals about VA business, and the additional content of his email gives even greater reason for concern. Mr. O'Rourke also noted that "as instructed by the Secretary" he would not "discuss the content" of his conversations with the president's associates with certain unnamed individuals. Exhibit B. Mr. O'Rourke's message shows that, at the direction of the Secretary, he was acting to keep the content of his official communications with the president's associates confidential. It is reasonable to infer that Mr. O'Rourke's provision of his personal email and cellphone number may have been motivated by his intent to conceal these communications—including from preservation under the Federal Records Act and public release under FOIA.

There is plainly reason to believe that former Acting Secretary O'Rourke has improperly removed federal records from VA's custody by using a personal email account and personal cell phone to conduct agency business, and you should also initiate action through the Attorney General to recover these records.

Moreover, Mr. O'Rourke's indication that his actions to conceal communications with the president's associates may have been taken at the direction of former Secretary Shulkin strongly suggest that other VA employees may have communicated with these individuals using non-official accounts at the then-Secretary's direction. VA should also undertake an investigation to determine whether any other subordinates of former Secretary Shulkin improperly conducted VA business through non-official electronic messaging accounts.

### _American Oversight Urges VA to Take Required Action_

American Oversight requests that VA take the following steps within sixty (60) days:

1)  Notify the Archivist of the United States of the evidence highlighted here, and any other evidence VA uncovers, giving reason to believe former Secretary Shulkin, former Acting Secretary O'Rourke, and any other officials have removed records of official communications with the president's associates from VA's custody;

2)  Seek to recover all records reflecting official communications with the president's Mar-a-Lago associates from former Secretary Shulkin and former Acting Secretary O'Rourke and ensure their preservation in compliance with the Federal Records Act; and

3)  Refer former Secretary Shulkin and former Acting Secretary O'Rourke's use of non-official electronic messaging accounts to communicate with the president's Mar-a-Lago associates to the Attorney General for the purpose of initiating an enforcement action to recover all such records.

We respectfully request that VA respond to this letter in writing within sixty (60) days to confirm that it has undertaken the steps above in compliance with its obligations under the Federal Records

Act. To the extent the Secretary fails to take these steps, we respectfully request that the Archivist request that the Attorney General initiate an enforcement action to recover the federal records described in this letter.

Please direct your correspondence to foia@americanoversight.org or American Oversight, 1030 15th Street NW, B255, Washington, DC 20005. If you have any questions or seek additional information please contact Dan McGrath at (202) 897-4213.

Sincerely,

Austin R. Evers
Executive Director
American Oversight

Cc:

The Honorable David S. Ferriero
Archivist of the United States
National Archives and Records Administration
700 Pennsylvania Avenue, N.W.
Washington, D.C. 20408

The Honorable Mark Takano
Chairman
Committee on Veterans' Affairs
U.S. House of Representatives
B234 Longworth House Office Building
Washington, DC  20515

The Honorable Elijah E. Cummings
Chairman
Committee on Oversight and Reform
U.S. House of Representatives
2157 Rayburn House Office Building
Washington, DC 20515

Michael J. Missal, Inspector General
U.S. Department of Veterans Affairs
VA Inspector General Hotline (53E)
810 Vermont Ave. NW
Washington, DC 20420

Enclosures:

Exhibit A – Email Records of Former VA Secretary David Shulkin

Exhibit B – Email Records of Former Chief of Staff and Acting Secretary Peter O'Rourke