**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| AMERICAN OVERSIGHT ET AL., *Plaintiffs*, | ) | |
| v. | ) | Case No. 19-cv-2519 (RDM) |
| U.S. DEPARTMENT OF VETERANS AFFAIRS ET AL., *Defendants*. | ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

FACTUAL BACKGROUND ........ 3

LEGAL STANDARDS ........ 8

I. Federal Records Act Recovery Action Claims ........ 8

II. Ripeness of APA Section 706(1) Claims ........ 9

ARGUMENT ........ 10

I. Plaintiffs' Claim that Defendants Must Carry Out a Discrete, Non-Discretionary Duty Required By Statute Is Fit for Judicial Review. ........ 12

A. Courts have repeatedly exercised jurisdiction over cases very similar to this action—even where defendant agencies undertook more robust recovery efforts than Defendants have here. ........ 15

B. Defendants Have "Unlawfully Withheld or Unreasonably Delayed" Taking the Statutorily-Required Step of Initiating an Enforcement Action to Recover Email Records Unlawfully Removed from Agency Custody Through Secretary Shulkin's Use of Personal Email to Conduct Agency Business. ........ 18

II. Plaintiffs, and the Public They Serve, Will Suffer Immediate and Significant Hardship in the Absence of Judicial Review. ........ 23

CONCLUSION ........ 26

## TABLE OF AUTHORITIES

### CASES

*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967) .......... 13, 14

*Air Line Pilots Ass'n, Int'l v. CAB*,
750 F.2d 81 (D.C. Cir. 1984) .......... 10, 13, 18

*Am. Petroleum Inst. v. EPA*,
683 F.3d 382 (D.C. Cir. 2012) .......... 23

*Armstrong v. Bush*,
924 F.2d 282 (D.C. Cir. 1991) .......... passim

*Barry Farm Tenants v. D.C. Hous. Auth.*,
311 F. Supp. 3d 57 (D.D.C. 2018) .......... 9

*Cause of Action Inst. v. Pompeo*,
319 F. Supp. 3d 230 (D.D.C. 2018) .......... 17, 21

*Cause of Action Inst. v. Tillerson*,
285 F. Supp. 3d 201 (D.D.C. 2018) .......... 16, 22, 25

*Citizens for Responsibility & Ethics in Wash. v. SEC*,
858 F. Supp. 2d 51 (D.D.C. 2012) .......... 16

*Cohen v. United States*,
650 F.3d 717 (D.C. Cir. 2011) .......... 9, 10, 23

*Devia v. Nuclear Regulatory Comm'n*,
492 F.3d 421 (D.C. Cir. 2007) .......... 13

*Fort Sill Apache Tribe v. Nat'l Indian Gaming Comm'n*,
103 F. Supp. 3d 113 (D.D.C. 2015) .......... 8, 9, 10

*Full Value Advisors, LLC v. SEC*,
633 F.3d 1101 (D.C. Cir. 2011) .......... 13

*Hyatt v. U.S. Patent & Trademark Office*,
110 F. Supp. 3d 644 (E.D. Va. 2015) .......... 13, 18

*Judicial Watch, Inc. v. Kerry*,
844 F.3d 952 (D.C. Cir. 2016) .......... passim

*Judicial Watch, Inc. v. Pompeo*,
744 F. App'x 3 (D.C. Cir. 2018) ........ 17

*Judicial Watch, Inc. v. Tillerson*,
293 F. Supp. 3d 33 (D.D.C. 2017) ........ 25

*Muwekma Tribe v. Babbitt*,
133 F. Supp. 2d 30 (D.D.C. 2000) ........ 10

*Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*,
417 F.3d 1272 (D.C. Cir. 2005) ........ 10, 13

*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004) ........ 8, 9

*Payne Enterprises, Inc. v. United States*,
837 F.2d 486 (D.C. Cir. 1988) ........ 25

*Pub. Citizen Health Research Grp. v. Comm'r, Food & Drug Admin*.,
740 F.2d 21 (D.C. Cir. 1984) ........ 14

*Rann v. Chao*,
154 F. Supp. 2d 61 (D.D.C. 2001) ........ 9

*Sabre, Inc. v. Dep't of Transp.*,
429 F.3d 1113 (D.C. Cir. 2005) ........ 10

*TRAC v. FCC*,
750 F.2d 70 (D.C. Cir. 1984) ........ 10, 13

**STATUTES**

44 U.S.C. § 2911 ........ 24

44 U.S.C. § 3106 ........ 8, 9, 12, 14

5 U.S.C. § 706(1) ........ 8, 9, 11, 13

**OTHER AUTHORITIES**

Arthur Allen, *Takano Opens Probe Into Mar-a-Lago Influence at VA*, Politico (Feb. 8, 2019, 3:13 PM), https://politi.co/36mQQEE ........ 4, 5

*House Democrats to Probe How Trump's Associates Influenced the VA*, Wall. St. J. (Feb. 8, 2019, 9:02 AM), https://on.wsj.com/2PVyupb ........ 4

Isaac Arnsdorf, *The Shadow Rulers of the VA*, ProPublica, Aug. 7, 2018, https://bit.ly/2tlJhQ6 .......... 23

Jennifer Steinhauer, *House Democrats, Newly Empowered, Turn Their Investigations on Veterans Affairs*, N.Y. Times, Feb. 8, 2019, https://nyti.ms/2Ff5TVi.......... 5

Press Release, Ranking Member Walz Renews Call for Transparency After VA Confirms Influence of Mar-a-Lago Shadow Rulers (Dec. 10, 2018), https://bit.ly/2JU4fuN. .......... 3

**RULES**

Fed. R. Civ. P. 12(b)(1).......... 9

## INTRODUCTION

As Secretary of the Department of Veterans Affairs ("VA"), David Shulkin engaged in a systematic practice of conducting official business through personal email accounts. This practice resulted in the unlawful removal of tens of thousands of pages of federal records from VA's custody—and, consequently, from the reach of public records requests and congressional oversight investigations. Defendants have known about this unlawful removal of records documenting the communications of VA's highest-ranking official for at least eleven months, and VA had clear reason to know of this violation for even longer. Yet Defendants have failed to carry out their non-discretionary statutory duty to initiate an enforcement action through the Attorney General to ensure the recovery of all records unlawfully removed by the former Secretary. In light of this systematic and illegal removal of public records of potentially substantial public importance, Plaintiffs seek relief compelling Defendants to comply with their statutory obligation.

Pointing to VA's belated and gentle requests that the former Secretary voluntarily restore the records he unlawfully removed to VA's custody, Defendants assert, remarkably, that this Court has no jurisdiction to hear Plaintiffs' claims because this case is not ripe. In advancing this argument, Defendants grope for cases discussing ripeness in inapposite contexts, ultimately hoping to achieve a result that would confound the very purpose of section 706(1) of the Administrative Procedure Act ("APA"), which permits challenges to agency action "unlawfully withheld or unreasonably delayed." Neither the factors courts consider in determining whether a claim is ripe, nor the Supreme Court's explanation of the purposes of the ripeness doctrine, support Defendants' arguments.

Defendants' flawed reasoning conflates a justiciability inquiry with the merits of an APA § 706(1) claim—which requires determining whether Defendants' failure to carry out an

admittedly mandatory duty constitutes an "unlawfully withheld or unreasonably delayed" agency action. Defendants' motion amounts to a merits argument that they have not unreasonably delayed undertaking their nondiscretionary duty, yet they couch their merits position in the cloak of ripeness in an effort to obtain a premature dismissal. Courts have rejected such efforts as an inappropriate attempt to litigate the merits of an APA § 706(1) claim prior to summary judgment, and this Court should do the same. Moreover, and in any event, the paltry remedial steps Defendant VA has taken thus far simply do not refute Plaintiffs' well-pleaded—and largely conceded—allegations that Defendants have violated their mandatory duty under the Federal Records Act ("FRA").

Defendants' position—that any ongoing agency action, or even the consideration of taking action, robs courts of jurisdiction to hear a claim for the initiation of an enforcement action to recover unlawfully removed records—would, in effect, nullify the mandatory duty imposed by the FRA, which the D.C. Circuit has zealously guarded since its decision in *Armstrong v. Bush*, 924 F.2d 282 (D.C. Cir. 1991). Such a contention is completely unsupported by the cases. To the contrary, courts analyzing similar actions seeking to compel agencies to initiate enforcement actions to recover unlawfully removed federal records have consistently exercised their judicial authority, even where ongoing agency recovery actions were significantly more robust than the steps Defendants have taken here. And dismissal is especially unwarranted where, as here, Defendants appear to only have begun their remedial efforts as a result of this litigation despite having known of Secretary Shulkin's unlawful conduct well before.

Defendants' remedial half-steps, taken many months (and even years) after they knew or had clear reason to know of the unlawful removal of the records at issue here, simply cannot absolve them of the duty to take the non-discretionary action the FRA requires. The former

Secretary's waffling responses to VA's gently worded requests and VA's vague allusions to its possible future action do not prevent this Court from exercising jurisdiction over Plaintiffs' claim that Defendants have failed to carry out a discrete, mandatory duty under the FRA following a significant unlawful removal of records by the very official charged by statute with ensuring his agency's compliance with the Act.

## FACTUAL BACKGROUND

It is uncontested that Secretary Shulkin used personal email accounts to communicate regarding official agency business while he served as the highest-ranking official at VA. *See generally* Compl., ECF No. 1; Compl. Ex. A; Decl. of John Buck, ECF No. 7-1 ("Buck Decl.") Ex. B. Nor is it contested that, through this practice, Secretary Shulkin unlawfully alienated federal records from VA's custody. *See* Compl. ¶¶ 30–40; Compl. Ex. A; Buck Decl. Ex. B; 44 U.S.C. § 2911. Indeed, Secretary Shulkin's practice of unlawfully removing records from agency custody was so systematic and extensive that he has so far provided VA with 21,985 pages of federal records from two of his personal, non-official email accounts. Buck Decl. ¶ 6, Ex B. Secretary Shulkin was using these non-official accounts to communicate regarding official agency business throughout his entire tenure as Secretary from February 2017 to March 2018. McGrath Decl. Ex. A; Compl. Ex. A.[1] These records have, consequently, long been beyond the reach of Congress's oversight requests[2] and hidden from the public view usually afforded by the FOIA.[3]

[1] Dr. Shulkin served as VA Secretary from February 14, 2017, to March 28, 2018. About VA, History – VA History, Dep't of Veterans Affairs, https://www.va.gov/about_va/vahistory.asp.

[2] *See, e.g.*, Press Release, Ranking Member Walz Renews Call for Transparency After VA Confirms Influence of Mar-a-Lago Shadow Rulers (Dec. 10, 2018), https://bit.ly/2JU4fuN.

[3] VA explicitly asserted to the public that the agency had been transparent about the agency's communications with three Mar-a-Lago club members, and private associates of the president,

Defendants' knowledge of Secretary Shulkin's unlawful removal of these records is long-standing. While Secretary Shulkin was engaging in the unlawful practice of using non-official email accounts without copying or promptly forwarding messages to his official account, he was Defendant VA's agency head—the very VA official charged by statute with ensuring compliance with the FRA, and whose awareness of facts suggesting potential violations triggers the agency's mandatory remedial duty. 44 U.S.C. § 3106(a). And Secretary Shulkin was engaged in this practice at least as far back as February 2017, the month he was confirmed to serve as Secretary. McGrath Decl. Ex. A.

In early February 2019, the *Wall Street Journal* reported that Secretary Shulkin wrote in an email that he had created a personal email account specifically for the purpose of facilitating "secure communication" on matters related to VA business, including with individuals outside the agency—presumably meaning communication "secure" from disclosure to the public or to Congress by virtue of not being properly within the agency's custody.[4] Both public reports and

by citing its release of those communications in response to FOIA requests. Arthur Allen, *Takano Opens Probe Into Mar-a-Lago Influence at VA*, Politico (Feb. 8, 2019, 3:13 PM), https://politi.co/36mQQEE. Yet public reports and the documents included in Plaintiffs' complaint suggest that Secretary Shulkin used personal email accounts extensively to communicate with these Mar-a-Lago associates of the president, preventing them from being produced in response to congressional inquiries or FOIA requests. Compl. Ex. A; Ben Kesling, *House Democrats to Probe How Trump's Associates Influenced the VA*, Wall. St. J. (Feb. 8, 2019, 9:02 AM), https://on.wsj.com/2PVyupb. The disconnect between VA's public representations about its transparency and the extensive use of personal email VA's agency head gives clear reason to view VA's subsequent remedial efforts with some skepticism.

[4] Kesling, *supra* note 3. The personal email accounts Secretary Shulkin used to conduct agency business were a Gmail account and an AOL account. *See* Compl. Ex. A; McGrath Decl. Ex. A. Given that the Secretary used common private email providers, it appears unlikely that he used these platforms because of a belief that they provided cyber-security features superior to government email systems, and it is reasonable to infer that by "secure," the Secretary meant that the records would not be in agency custody.

documents obtained by Plaintiffs show that the former Secretary used personal email to communicate with private associates of President Trump who were members of his Mar-a-Lago Club ("the Mar-a-Lago associates"). Compl. ¶¶ 3–7; Compl. Ex. A. The sway of these private individuals over VA policies and operations has received significant public scrutiny and has been the subject of congressional inquiries.[5] Defendant National Archives and Records Administration ("NARA") alerted Defendant VA to these reports in February 2019. Buck Decl. ¶ 4. In April and May 2019, respectively, each Plaintiff sent separate letters to Defendants requesting that they take action to recover records unlawfully removed from VA custody through Secretary Shulkin's use of personal email accounts, including by initiating an enforcement action through the Attorney General. Compl. Exs. C, D. Plaintiffs' letters highlighted that records produced in response to FOIA requests, along with press reports, showed that Secretary Shulkin had used personal email accounts to communicate with the Mar-a-Lago associates regarding agency business without properly copying or forwarding those emails to his official account. *Id*.

In early June 2019, Defendant VA sent a letter to Secretary Shulkin requesting that he provide, on a voluntary basis, a list of all non-official email addresses he used to conduct agency business, copies of all email messages he sent or received on non-official accounts to conduct agency business, and confirmation that he had provided all unlawfully removed federal records. Buck Decl. Ex. A. In late June, Secretary Shulkin responded to VA's letter enclosing a disc with approximately 21,985 pages of documents from two personal email accounts that he determined "fall under the Federal Records Act," demonstrating his apparently extensive and systematic

[5] *See* Allen, *supra* note 3; Jennifer Steinhauer, *House Democrats, Newly Empowered, Turn Their Investigations on Veterans Affairs*, N.Y. Times, Feb. 8, 2019, https://nyti.ms/2Ff5TVi.

violation of the FRA. Buck Decl. ¶ 6, Ex. B. The former Secretary provided almost no description of how he identified the records that he produced. Buck Decl. Ex. B.

In his June 2019 response, which was unsworn, Secretary Shulkin explicitly refused to confirm that he had turned over all federal records in his custody, writing that VA should note that "I am not an attorney" or "an expert on the Federal Records Act," and "I reserve the right to supplement this response in the event that I discover additional Federal records." *Id.* Four months later, and only ten days before filing the instant motion to dismiss, Defendant VA responded to Secretary Shulkin's letter, expressing VA's appreciation for the Secretary's response, requesting the preservation of the emails in his personal email accounts, and seeking authorization for "the service providers of his personal email accounts to retrieve messages constituting federal records" and to forward them to VA upon the agency's request. Buck Decl. Ex. C. Neither of VA's letters to Secretary Shulkin threatened legal action, pressed the former Secretary to attest to his efforts in any kind of binding manner, or even asked him to explain what steps he had taken to identify federal record material in his possession such that VA could test for itself whether his approach seemed reasonable. *See* Buck Decl. Exs. A, C.

Defendant VA represented, in support of the instant motion, that it had not yet determined whether *any* "further actions" would be "necessary or appropriate" to ensure recovery of all federal records that Secretary Shulkin unlawfully removed through his use of personal email to conduct agency business. Buck Decl. ¶ 8. Pointing to their delayed and incomplete responses, Defendants have moved to dismiss this case on grounds that it is not ripe for judicial review due to ongoing agency processes. Defs.' Mot. to Dismiss at 6–7, ECF No. 7 (Defs.' Mot.).

At a status conference before this Court following Defendants' filing of the instant

motion, Defendants represented that they didn't "have a projection" of when they would know whether they have received all the needed records from Secretary Shulkin. Tr. of Status Conf. at 5:14–19 (Nov. 15, 2019), ECF No. 9. Defendants further could not report on any conversations with Secretary Shulkin about the removed records or explain "what Dr. Shulkin or his counsel were thinking or doing" when they searched for federal records. *Id.* at 5:1–7:4. This Court then directed Defendants to inquire with Secretary Shulkin about "the secretary's response to the agency's request that he and his counsel . . . confer with the Department about what was done, what e-mails exist, how decisions were made about what constituted federal records," and "the basis" for not turning over any "e-mails that in any way pertained to the agency." *Id.* at 15:16–23.

After this Court's Order, Defendants indicate that they discussed at least some of those matters with Secretary Shulkin. *See* Status Report (Dec. 13, 2019), ECF No. 10 (Defs.' Status Report). Despite VA's initial representation that the agency was considering whether any further action at all was necessary, Defendants now note that, following the communications undertaken at the Court's direction, Secretary Shulkin's search efforts for unlawfully removed federal records "require some supplementation." *Id*. ¶ 3. Defendants have not fully explained why Secretary Shulkin has not restored all federal records to agency custody. *Id*. Defendants still offer no timeline for their efforts to obtain records unlawfully removed by Secretary Shulkin. *See generally* Defs.' Status Report.

Plaintiffs American Oversight and Democracy Forward Foundation ("DFF") have submitted multiple FOIA requests for records of Secretary Shulkin's communications with the Mar-a-Lago associates and, more broadly, his communications regarding agency business using

non-official or personal electronic messaging accounts. Compl. ¶¶ 11, 13. These requests date back as far as May 2018. Compl. ¶ 11.

Two weeks after Defendants filed the instant motion, VA began making interim productions of records to each Plaintiff. Those productions contained several hundred pages of Secretary Shulkin's official communications on his personal email accounts. McGrath Decl. ¶¶ 2–3 . VA has estimated that approximately 8,000 pages of Secretary Shulkin's personal emails are potentially responsive to Plaintiffs' request for communications with or about the Mar-a-Lago associates. Joint Status Report at 3, *Am. Oversight v. U.S. Dep't of Veterans Affairs*, No. 1:18-cv-02463-KBJ (D.D.C. Dec. 11, 2019), ECF No. 18. Far from exculpating Defendants' intransigence, the records VA has now produced—which demonstrate that Secretary Shulkin's use of personal email accounts to conduct agency business began nearly from the moment he assumed the duties of Secretary, McGrath Decl. Ex. A—serve only to prove Plaintiffs' case, demonstrating the need for judicial intervention to compel VA to fulfill its mandatory duty to initiate an enforcement action to recover the unlawfully removed records.

## <u>LEGAL STANDARDS</u>

### I. Federal Records Act Recovery Action Claims

The APA supplies a cause of action to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); *Fort Sill Apache Tribe v. Nat'l Indian Gaming Comm'n*, 103 F. Supp. 3d 113, 119 (D.D.C. 2015). The Supreme Court has explained that a claim under § 706(1) can proceed "where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).

The "recovery provisions" of the FRA, 44 U.S.C. § 3106, impose exactly this kind of "discrete" duty, which agency heads and the Archivist of the United States are "required to take"

when agency records are unlawfully removed or destroyed. *See Judicial Watch, Inc. v. Kerry*, 844 F.3d 952, 954 (D.C. Cir. 2016) (holding that the FRA "recovery provisions" fit the requirements of *Southern Utah Wilderness Alliance*, and permit actions to compel defendant agencies to initiate an enforcement action for recovery of federal records) (citing *Armstrong v. Bush*, 924 F.2d 282, 295 (D.C. Cir. 1991)). Specifically, when an agency head "knows or has reason to believe" that records "have been unlawfully removed from" her agency, the statute mandates that she "with the assistance of the Archivist shall initiate action through the Attorney General for the recovery of records." 44 U.S.C. § 3106(a). When the head of an agency fails to fulfill those statutory duties within a "reasonable period of time after being notified" or if the agency head herself "is participating in, or believed to be participating" in the unlawful removal, the FRA dictates that "the Archivist shall request the Attorney General to initiate such an action, and shall notify the Congress when such a request has been made." 44 U.S.C. § 3106(b).

## II. Ripeness of APA Section 706(1) Claims

To hear an APA § 706(1) claim, a court must ascertain that it has subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1); *Fort Sill Apache Tribe*, 103 F. Supp. 3d at 119. In evaluating a Rule 12(b)(1) motion challenging the existence of subject matter jurisdiction, a court "must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff," though the court "need not 'accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations.'" *Barry Farm Tenants v. D.C. Hous. Auth.*, 311 F. Supp. 3d 57, 63 (D.D.C. 2018) (citing *Rann v. Chao*, 154 F. Supp. 2d 61, 64 (D.D.C. 2001)).

A court lacks subject matter jurisdiction over claims that are not ripe for judicial review. *Barry Farm*, 311 F. Supp. 3d at 66. "The ripeness inquiry probes the fitness for review of the legal issue presented." *Cohen v. United States*, 650 F.3d 717, 734 (D.C. Cir. 2011) (citations and

internal quotation marks omitted). "[T]he fitness of an issue for judicial decision depends on whether it is purely legal, whether consideration of the issue would benefit from a more concrete setting, and whether the agency's action is sufficiently final." *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 417 F.3d 1272, 1281 (D.C. Cir. 2005) (citations and internal quotation marks omitted). Even if a court determines that an issue is not clearly "fit" for judicial review, it may exercise jurisdiction in light of "the hardship to the parties of withholding court consideration." *Cohen*, 650 F.3d at 734–35. The D.C. Circuit has "long understood" the Supreme Court's ripeness precedent "to incorporate a presumption of reviewability." *Sabre, Inc. v. Dep't of Transp.*, 429 F.3d 1113, 1119 (D.C. Cir. 2005) (citations omitted).

Importantly, for APA § 706(1) claims, "the lack of a final order by the agency, which might otherwise engender a question about ripeness, does not preclude [the] court's jurisdiction." *Fort Sill Apache Tribe*, 103 F. Supp. 3d at 119 (citing *Muwekma Tribe v. Babbitt*, 133 F. Supp. 2d 30, 34 (D.D.C. 2000) (citing *TRAC v. FCC*, 750 F.2d 70, 75 (D.C. Cir. 1984))). "By definition, a claim of unreasonable delay cannot await final agency action before judicial review, since it is the very lack of agency action which gives rise to the complaint." *Air Line Pilots Ass'n, Int'l v. CAB*, 750 F.2d 81, 85 (D.C. Cir. 1984).

## ARGUMENT

In the face of an acknowledged and extensive unlawful removal of federal records by Secretary Shulkin, Defendants assert that Plaintiffs' action to compel them to carry out a non-discretionary statutory duty should be dismissed as unripe for judicial review. Defendants' motion to dismiss should be denied. Defendants have acknowledged Secretary Shulkin's unlawful removal of federal records through his extensive use of personal email accounts to conduct agency business, and the FRA requires that they initiate an enforcement action through the Attorney General to ensure all removed records are recovered. While VA has taken some

belated and incomplete efforts to reach out to Secretary Shulkin—some of which came only after this Court ordered the agency to do so—to encourage him to voluntarily disgorge federal records in his possession, Defendants have neither sought the aid of the Attorney General, as the FRA requires, nor taken the kind of forceful pre-referral action that could even conceivably obviate the need for the required referral to the Attorney General.

The factors courts consider in determining whether a claim is ripe for judicial review, consequently, weigh decisively in favor of this Court's exercise of jurisdiction: the question before the court is purely legal, and the facts alleged and acknowledged are sufficiently concrete for judicial resolution. A final agency determination is not required where, as here, plaintiffs' claims seek to compel a mandatory agency action that has been "unlawfully withheld or unreasonably delayed." Indeed, it would be illogical to dismiss Plaintiffs' claims seeking to compel a discrete, mandatory agency action on the grounds that it has been "unlawfully withheld or unreasonably delayed" simply because Defendants assert that they have not reached a final administrative determination. As courts have observed, dismissing unreasonable delay claims for lack of ripeness is definitionally inappropriate and would threaten to render unripe *all* claims of unreasonable delay under APA § 706(1).

Defendants' motion to dismiss here, in fact, seeks a ruling on the *merits* of Plaintiffs' claims of unreasonable delay under the guise of ripeness. But this motion to dismiss is an inappropriate vehicle for the Court to make that merits determination, and, in any case, Defendants' reluctant and gentle remedial actions simply do not obviate their duty to comply with their statutory obligations. Accordingly, courts have regularly exercised judicial review over FRA actions very similar to this case irrespective of whether the defendant agencies have some "ongoing" administrative processes that fall short of the required initiation of an

enforcement action through the Attorney General.

## I. Plaintiffs' Claim that Defendants Must Carry Out a Discrete, Non-Discretionary Duty Required By Statute Is Fit for Judicial Review.

Plaintiffs here ask the Court to order Defendants to carry out their discrete, mandatory duty, required by the FRA, to initiate an enforcement action through the Attorney General, 44 U.S.C. § 3106. Such a referral is required in *any* case of unlawful removal of records; here, it is plainly needed in response to an acknowledged, systematic removal of tens of thousands of pages of federal records from VA custody by the agency's highest-ranking official—indeed, by the very official who was charged with ensuring compliance with the FRA. Buck Decl. ¶ 6; Buck Decl. Ex. B; Compl. ¶¶ 30–40. Plaintiffs have alleged—and Defendants have all but conceded the facts underpinning the allegation—that Defendants have "unlawfully withheld or unreasonably delayed" taking this required action. 5 U.S.C. § 706(1); Compl. ¶¶ 25–29, 52–58, 59–61. Defendants do not contest that the former VA Secretary engaged in a practice of unlawfully removing federal records from agency custody. Nor do they contest that they have—at least since February 2019—had actual knowledge of the former Secretary's unlawful alienation. Buck Decl. ¶ 4; Buck Decl. Ex. A; Compl. ¶¶ 3–4, 8, 30–35. And they cannot contest that they had clear reason to believe an unlawful alienation had occurred for far longer still. McGrath Decl. Ex. A (showing then-Secretary Shulkin—the VA official charged by statute with ensuring compliance with the FRA—began the practice of using personal email to conduct agency business in February 2017, thus demonstrating VA Defendants' knowledge of the unlawful removal for nearly three years).

The question presented here—whether Defendants are required to take a discrete, mandatory action—is "purely legal," and thus "presumptively reviewable," and it does not require additional "concrete" facts for this Court to exercise jurisdiction. *Nat'l Ass'n of Home*

*Builders*, 417 F.3d at 1281–82 (citations omitted). Moreover, Defendants' reliance on case law requiring "final" agency decisions from other contexts[6] is inapposite in this case, Defs.' Mot. at 7–8, where Plaintiffs' claims seek to compel an agency action on the grounds that it has been "unlawfully withheld *or unreasonably delayed*." 5 U.S.C. § 706(1) (emphasis added). Courts have explained that requiring a "final agency action" before exercising judicial review in cases where plaintiffs seek to compel action would be definitionally illogical. *Air Line Pilots Ass'n*, 750 F.2d at 85 ("By definition, a claim of unreasonable delay cannot await final agency action before judicial review, since it is the very lack of agency action which gives rise to the complaint."); *Hyatt v. U.S. Patent & Trademark Office*, 110 F. Supp. 3d 644, 654 (E.D. Va. 2015) ("To hold . . . that plaintiff's claim that [agency action] has been unreasonably delayed is unripe because [the agency's] examination is still ongoing would render the 'unreasonable delay' provision of § 706(1) completely meaningless.").[7]

[6] Defendants rely on case law from dramatically different contexts to make a broad over-generalization that *any* "ongoing" "agency assessment" makes a case unripe for review. Defs.' Mot. at 7–8. For example, Defendants rely on *Full Value Advisors, LLC v. SEC*, 633 F.3d 1101 (D.C. Cir. 2011), which involved a regulated company's challenge to a regulatory requirement before the relevant agency had decided whether the requirement would even apply to that company. *Id.* at 1107. And Defendants rely on *Devia v. Nuclear Regulatory Comm'n*, 492 F.3d 421 (D.C. Cir. 2007), where the court found that the "agency decision" to grant a license to build a nuclear power plant "may never have 'its effects felt in a concrete way by the challenging parties,'" because two other agencies had taken actions that blocked the building of the power plant. *Id.* at 424–25. In this case, by contrast, Plaintiffs have already been deprived access to unrecovered federal records for an extended period of time, and no intervening government agency has prevented Defendants from carrying out their discrete, statutory duty to initiate an enforcement action.

[7] This logical refusal to dismiss as unripe actions where plaintiffs seek to compel the agency to act where it has "unreasonably delayed" action is in accord with the Supreme Court's direction that the "finality" element of the ripeness doctrine should be applied in a "pragmatic" and "flexible" manner. *Abbott Labs. v. Gardner*, 387 U.S. 136, 150 (1967); *see also TRAC v. FCC*, 750 F.2d 70, 75 n.27 (D.C. Cir. 1984) ("[T]he finality requirement does not preclude us from reviewing claims of unreasonable agency delay." (citation omitted)).

Defendants elide the distinction between unreasonable delay cases (such as this one) and challenges to final agency action. But the ripeness doctrine applies differently in the two settings, and for good reason. The Supreme Court has explained that the ripeness doctrine serves two main functions: first to prevent courts "from entangling themselves in abstract disagreements over administrative policies," and second "to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967).

Neither of those purposes is served by applying the ripeness doctrine to cases like this one, where the agency has a nondiscretionary duty that is well established in controlling precedent, and yet the agency has been sluggish or simply intransigent in carrying it out. There are no "abstract disagreements over administrative policies" in this case. *Id*. The former Secretary's removal of federal records is acknowledged, extensive, and in no way "abstract," and the unambiguous text of the FRA's § 3106 leaves no room for disagreement over agency "policies." *See* 44 U.S.C. § 3106. The D.C. Circuit has described § 3106 as containing "clear statutory language mandating that the agency head and Archivist seek redress for the unlawful removal or destruction of records" that "leave[s] *no* discretion to determine which cases to pursue." *Armstrong*, 924 F.2d at 295–96. The agencies here, moreover, do not need to be "protect[ed]" from "judicial interference" because they have no discretion or policy-making latitude. *Abbott Labs*, 387 U.S. at 148; *cf. Pub. Citizen Health Research Grp. v. Comm'r, Food & Drug Admin.*, 740 F.2d 21, 28–29 (D.C. Cir. 1984) (finding an action unripe because court might interfere with agency processes where the statute allocated the agency discretion to make policy decisions based on complex scientific evidence).

Rather, Defendants seek a merits determination at the threshold stage despite the

requirement to take all well-pled facts as true and the absence of a factual record to support resolution on the merits. Because they cannot seriously dispute that Plaintiffs have plausibly alleged a violation of Defendants' non-discretionary duty, they couch their argument as jurisdictional in nature. But a determination as to whether Defendants have unlawfully withheld or unreasonably delayed their nondiscretionary duty to initiate an enforcement action is properly decided on summary judgment with a developed factual record, not in a motion challenging the Court's jurisdiction to hear this case at all.

**A. Courts have repeatedly exercised jurisdiction over cases very similar to this action—even where defendant agencies undertook more robust recovery efforts than Defendants have here.**

Defendants posit that VA's purported ongoing efforts—which involve two short letters, a suggestion that further agency action might be taken, and a court-ordered conversation with Secretary Shulkin, Buck Decl. ¶ 8, Buck Decl. Exs. A, C; Defs.' Status Report—create the possibility that at some unspecified future time Plaintiffs' claims may be mooted by Defendants' recovery actions, and thus this action should be dismissed. Defs.' Mot. at 8–9. But Defendants' attempt to dismiss Plaintiffs' claims on ripeness grounds in reliance on VA's limited remedial actions—all of which seek to use voluntary requests for compliance—is merely an attempt to refashion an argument courts have rejected in very similar circumstances through a different vehicle.[8]

In fact, courts have repeatedly exercised jurisdiction over claims very similar to Plaintiffs' claims here, implicitly finding the cases to be ripe for judicial review. For instance, in *Judicial Watch, Inc. v. Kerry*, the D.C. Circuit found that the district court erred in finding that "*some* action" by the defendant agency and the Archivist eliminated judicial review of the

[8] In these similar actions the defendant agencies generally advanced motions to dismiss on standing or mootness grounds rather than arguments based on ripeness.

plaintiffs' claim that the defendants were required to initiate an enforcement action through the Attorney General to recover records unlawfully removed through Secretary Clinton's use of personal email. 844 F.3d 952, 956 (D.C. Cir. 2016). The court made clear that even the "sustained effort" by defendants to recover the removed records, "yielding a very substantial harvest," did not prevent judicial review of the plaintiffs' claim that the defendants were required to initiate an enforcement action. *Id*. The defendant agency in *Judicial Watch*, moreover, had engaged in recovery efforts substantially more robust than those that VA has engaged in here. In *Judicial Watch*, the defendant agency had, for example, requested that the FBI produce any federal records it uncovered from an ongoing investigation. *Id*. at 955. Here, by contrast, VA first merely sent letters to Secretary Shulkin requesting he voluntarily produce and preserve records he unlawfully removed from agency custody without even the threat of legal action. Buck Decl. Exs. A, C. Then, only at the Court's direction in the course of this litigation, did Defendants follow up with Secretary Shulkin to request details after indicating that no further action might be necessary. Defs.' Status Report at 1; Buck Decl. ¶ 8, Ex. C. Defendants have failed to marshal law enforcement authority or to employ the type of firm, commanding recovery steps that other agencies have used to recover records unlawfully removed by former high-ranking officials.

Moreover, in *Cause of Action Institute v. Tillerson*, the court exercised jurisdiction and refused to dismiss the plaintiffs' claim where the defendant agency had only asked for Secretary Powell's voluntary compliance in seeking to recover federal records from his personal email account, which he had used to conduct agency business. 285 F. Supp. 3d 201, 208 (D.D.C. 2018). The court there explained that "there's a difference between kindly asking records custodians to help, and enlisting the Attorney General's coercive power." *Id.*; *see also Citizens for Responsibility & Ethics in Wash. v. U.S. SEC*, 858 F. Supp. 2d 51, 63 (D.D.C. 2012)

(declining to dismiss FRA recovery claims on ripeness grounds even where the agency argued it had undertaken some actions relevant to document retention and preservation).

Defendants rely on later opinions in these same cases where, following the courts' refusals to prematurely dismiss the plaintiffs' actions despite ongoing agency processes, the defendant agencies undertook significantly more robust efforts to establish that all extant federal records were actually recovered. Defs.' Mot. at 8–9. Yet Defendants make no such factual assertion here—they do not even claim, much less support with evidence, that they have recovered all federal records unlawfully removed by Secretary Shulkin. That stands in stark contrast to the cases Defendants cite. In *Judicial Watch, Inc. v. Pompeo*, 744 F. App'x 3 (D.C. Cir. 2018) (unpublished decision), the court upheld the district court's dismissal of plaintiff's claim as moot—after overturning the district court's initial dismissal—only after "the FBI's thorough investigation" was concluded and it was clear that an enforcement action would not result in the recovery of additional records. *Id.* at 4. And in *Cause of Action Inst. v. Pompeo*, 319 F. Supp. 3d 230 (D.D.C. 2018), the court only eventually dismissed the plaintiff's claim as moot after Secretary Powell confirmed "under penalty of perjury" that he had no further access to unlawfully removed records or information that could aid in their recovery and after Secretary Powell's email service provider's legal team provided written confirmation that further recovery was "not technologically possible." *Id*. at 233, 235.

The defendants in the above cited cases undertook the rigorous recovery actions that eventually allowed them to moot the plaintiffs' claims only *after* courts first denied motions to dismiss those actions. Without the courts appropriately exercising judicial review, the agencies would likely not have carried out the extensive recovery efforts that courts later found to have obviated the need to initiate enforcement through the Attorney General. Here, likewise, it is

reasonable to infer that Defendant VA only sent its October 18, 2019 letter to Secretary Shulkin's counsel—which explicitly cites this litigation and was sent only ten days before it filed the Motion to Dismiss—as a result of Plaintiffs' action. Buck Decl. Ex. C. And it is clear that VA was only prompted to follow up with Secretary Shulkin about his search and recovery efforts—five months after his initial response—as a result of the Court's directives in the course of this litigation. *See* Defs.' Status Report at 1 ("Defendants make this status report pursuant to the Court's order at the November 15, 2019, hearing"); Tr. of Status Conf. at 3:23–7:24 (Nov. 15, 2019), ECF No. 9.

If VA intends to undertake aggressive administrative action of the sort that could, at some indeterminate point in the future, make further recovery efforts unnecessary, it should do so. At that time, it might be appropriate for the Court to entertain a motion for summary judgment or an argument that the case has been mooted. But Defendants' representations to date fall far short of what courts have required in closely related contexts. Accordingly, this Court has jurisdiction over this case, and the Court should exercise that jurisdiction to ensure that Defendants take all required steps to recover the records unlawfully removed by Secretary Shulkin.

**B. Defendants Have "Unlawfully Withheld or Unreasonably Delayed" Taking the Statutorily-Required Step of Initiating an Enforcement Action to Recover Email Records Unlawfully Removed from Agency Custody Through Secretary Shulkin's Use of Personal Email to Conduct Agency Business.**

As noted above, dismissing an action that seeks to compel agency action that has been "unlawfully withheld or unreasonably delayed" as unripe because the agency's failure to act is purportedly not "final" is illogical and would render § 706(1) "completely meaningless." *Hyatt*, 110 F. Supp. 3d at 654; *see also Air Line Pilots Ass'n, Int'l*, 750 F.2d at 85. Although Defendants really seek a merits determination through their instant ripeness motion, this motion to dismiss is an inappropriate vehicle for deciding the ultimate issue. If Defendants wish to contest the merits

of Plaintiffs' claims, they must do so on summary judgment and in the face of a record that shows that Defendants have "unlawfully withheld," or at least "unreasonably delayed," carrying out their discrete, mandatory duty to initiate an enforcement action.

The FRA "'*requires* the agency head and Archivist to take enforcement action' through the Attorney General whenever they became aware of records being unlawfully removed or destroyed." *Judicial Watch, Inc.*, 844 F.3d at 956 (quoting *Armstrong*, 924 F.2d at 295). Here, Defendants do not contest that Secretary Shulkin used personal email to conduct agency business, and Defendants have introduced evidence that they have been aware for more than five months that Secretary Shulkin removed at least tens of thousands of pages of federal records from agency custody. Buck Decl. Ex. B. And VA has now produced records demonstrating that Secretary Shulkin—the very agency head charged with ensuring FRA compliance—had direct knowledge of his own unlawful removal of federal records nearly three years ago. McGrath Decl. Ex. A.

But Defendants have still not initiated an enforcement action through the Attorney General to ensure recovery of all the records unlawfully removed by Secretary Shulkin, and Defendant VA represented in support of the instant motion that no "further actions" beyond its voluntary requests to Secretary Shulkin may be "necessary or appropriate." Buck Decl. ¶ 8.[9] Although Defendants' motion represents that VA "may yet . . . refer the matter to the Attorney General," Defs.' Mot. at 11, the declaration Defendant VA submitted in support of this motion to dismiss does not indicate that the agency is actually considering carrying out this mandatory statutory duty. *See* Buck Decl. ¶ 8. Indeed, Defendants provided no timeline or estimate for when

[9] It was only through this Court's directives that Defendants were prompted to take subsequent action, which led Defendants to represent that Secretary Shulkin will need to supplement his initial response. *See* Defs.' Status Report ¶ 3.

they will know whether they have received all federal records from Secretary Shulkin. *See* Tr. of Status Conf. at 5:14–19 (Nov. 15, 2019), ECF No. 9. Defendants have also not set forth any plan or criteria by which they might determine whether and when they will refer the action to the Attorney General. *See* Buck Decl. Ex. C; Defs.' Status Report.

Defendants rely heavily on a footnote in *Armstrong* to support their reasoning that their failure to initiate an enforcement action through the Attorney General is appropriate and that this action should be dismissed as VA's administrative "process continues." Defs.' Mot. at 8–9 (citing *Armstrong*, 924 F.2d at 296 n.12). The D.C. Circuit in *Armstrong* did allow, in a footnote, that the agency head and Archivist might fulfill their FRA duties by taking "such intra-agency actions as disciplining staff involved in the unlawful action, increasing oversight by higher agency officials, or threatening legal action," before initiating an enforcement action. *Armstrong*, 924 F.2d at 296 n.12. But, absent evidence that the agency has brought coercive administrative mechanisms to bear in service of recovery, *Armstrong*'s general proposition—that the FRA "*requires* the agency head and the Archivist to take enforcement action" after "*any* . . . unlawful removal"—must govern. *Id.* at 295–96; *see also id.* at 296 n.12 ("We emphasize the mandatory statutory language because it indicates that the agency head and Archivist are required to take action to prevent the unlawful destruction or removal of records and, if they do not, private litigants may sue under the APA to require them to do so.").

And here, VA has not undertaken anything close to the type of measures short of an enforcement action that were contemplated by the *Armstrong* court, even as Defendants have long known, or had clear reason to know, that Secretary Shulkin unlawfully removed records of his official communications from agency custody.[10] Moreover, because Secretary Shulkin is now

[10] As noted above, Secretary Shulkin was himself the agency head charged by statute with

a *former* official who is no longer subject to agency control, Defendants have missed the opportunity to take the type of "intra-agency" actions to assure recovery of unlawfully removed records that the *Armstrong* court envisioned might supplant the need to initiate an enforcement action. For example, Secretary Shulkin can neither be disciplined nor subjected to additional oversight by superiors to ensure his compliance with the FRA and his return of unlawfully removed records. *Id*. at 296 n.12 (pointing to "such intra-agency actions as disciplining staff involved in the unlawful action, increasing oversight by higher agency officials").

Defendants have also neither threatened legal action against Secretary Shulkin nor demanded that he provide sworn confirmation that all unlawfully removed records have been transferred to agency custody. Instead, VA merely sent Secretary Shulkin a letter requesting that he voluntarily provide VA with copies of all his personal email messages concerning VA business and written confirmation that all such records had been provided to VA. Buck Decl. Ex. A. Secretary Shulkin responded with a letter disclaiming his expertise in the FRA and a disc producing tens of thousands of pages of records that he determined were federal records from his personal email accounts—demonstrating the apparently extensive nature of his FRA violations—but declined to give assurances that his response was complete. Buck Decl. Ex. B. Far from providing full assurances under penalty of perjury, as Secretary Powell did in *Cause of Action Institute*, 319 F. Supp. 3d at 233, Secretary Shulkin repeatedly hedged on the completeness of his response. Buck Decl. Ex. B. He asked VA to "note that I am not an attorney" nor "an expert on

ensuring FRA compliance when he was knowingly using personal email to conduct agency business beginning in February 2017. McGrath Decl. Ex. A. For their part, Defendants NARA and the Archivist have known that Secretary Shulkin reportedly used personal email in order to have "secure communication" since at least February 2019. Buck Decl. ¶ 4. Plaintiffs highlighted additional records to Defendants demonstrating evidence of Secretary Shulkin's unlawful removals in demand letters in April and May of 2019. Compl. Exs. C, D.

the Federal Records Act," and wrote that he "reserve[d] the right to supplement" his response "in the event that I discover additional Federal records." *Id*.

VA did not respond to Secretary Shulkin's letter for nearly four months—until shortly before filing the instant motion to dismiss—and VA's eventual response noted only the Department's appreciation for his response. Buck Decl. Ex. C. VA did not press the former Secretary to provide more firm assurances that all federal records within his personal email accounts had been produced to the Department or threaten legal action in light of his extensive use of personal email to conduct agency business. *Id*. Such plodding engagement and "kindly" requests for voluntary compliance are simply insufficient for Defendants to argue that their failure to carry out the statutorily required step of "enlisting the Attorney General's coercive power," *Cause of Action Inst.*, 285 F. Supp. 3d at 208, is permissible and sufficient to deprive the Court of jurisdiction. Only as a result of this litigation, and after this Court's orders, did Defendants contact Secretary Shulkin again to, at least minimally, assess his compliance with VA's request that he restore all unlawfully removed records to VA's custody. *See* Buck Decl. Ex. C; Tr. of Status Conf. at 3:23–7:24 (Nov. 15, 2019), ECF No. 9. While Defendants now claim that Secretary Shulkin "has every intention of cooperating," they have not offered evidence that his compliance is ensured in the manner it would be by an enforcement action or, at a minimum, the type of coercive actions that courts have acknowledged may obviate the need for an enforcement action. Defs.' Status Report ¶ 3.

VA's limited administrative actions, in the face of a systemic unlawful removal of federal records by the agency's former highest-ranking official (of which all Defendants have had knowledge for at least eleven months) simply do not absolve Defendants of their duty to carry out the discrete action—initiation of an enforcement action through the Attorney General—that

is required by statute. The FRA leaves Defendants "no discretion to determine which cases to pursue," and they are plainly required to pursue this case of acknowledged, extensive removal of records containing the official communications of the VA's highest-ranking official. *Judicial Watch Inc.*, 844 F.3d at 954 (quoting *Armstrong*, 924 F.2d at 295).

## II. Plaintiffs, and the Public They Serve, Will Suffer Immediate and Significant Hardship in the Absence of Judicial Review.

If a court finds that a case is fit for judicial review, as the Court plainly should here, its ripeness inquiry should end. *Cohen*, 650 F.3d at 735 ("[O]nce we have determined that an issue is clearly fit for review, there is no need to consider 'the hardship to the parties of withholding court consideration.'" (citations omitted)). But even if the Court believes that this case is not clearly fit for review, the Court should still exercise jurisdiction in light of the "immediate and significant" hardship to the parties present in this case. *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 389 (D.C. Cir. 2012).

Plaintiffs' missions are substantially undermined by Defendants' delay in complying with the mandatory recovery provisions of the FRA—a hardship that would only be worsened by indefinitely deferring judicial review. Plaintiffs are public interest organizations dedicated to ensuring government transparency and promoting accountability for government officials. Compl. ¶¶ 10, 12. Plaintiffs have submitted FOIA requests for records of Secretary Shulkin's official communications in order to carry out these organizational missions. *Id.* ¶¶ 11, 13. Several of Plaintiffs' FOIA requests—which date back to May, August, and September of 2018—seek to shed light on the potentially improper influence of private associates of the president from his Mar-a-Lago club on VA's operations and policies. *Id.*; *see also* Isaac Arnsdorf, *The Shadow Rulers of the VA*, ProPublica, Aug. 7, 2018, https://bit.ly/2tlJhQ6. As of the filing of Defendants' motion, Plaintiffs had no access to records unlawfully removed from

agency custody by Secretary Shulkin, and, without judicial review, Plaintiffs may be deprived of access to some responsive records permanently.

Secretary Shulkin reportedly wrote that he decided to use personal, non-official email to communicate in order to ensure "secure communication" with the president's Mar-a-Lago associates.[11] Conducting government business through private email by federal employees is strongly disfavored, and only permitted where specific steps are taken to ensure the agency retains continuous custody of those federal records. *See* 44 U.S.C. § 2911. This policy is based, at least in part, on concerns that use of non-official electronic messaging accounts, which may lack cyber-security protections included with government email systems, would make messages containing sensitive information pertaining to government business subject to corruption or intercept. Thus, it is far more than reasonable to infer that the Secretary meant that such communications would be "secure" from lawful public disclosure in response to FOIA requests and congressional oversight inquiries rather than that he was resorting to use of private accounts to ensure "secure communication" in an information technology security sense. Indeed, in doing so, Secretary Shulkin deprived FOIA requesters, including Plaintiffs, and congressional investigators of access to these official communications of the former Secretary, which they have long sought.

Defendants posit that their ongoing efforts sufficiently mitigate any hardship Plaintiffs suffer as a result of Secretary Shulkin's systematic removal of records of his official communications. Defs.' Mot. at 10–11. But Defendants, thus far, have relied only on Secretary Shulkin's self-professed willingness to cooperate. Buck Decl. Ex. B; *see* Defs.' Status Report

[11] Kesling, *supra* note 3 ("Dear Friends–I have set up a new email address just for our secure communications on issues in the future.").

¶ 3; *cf. Cause of Action Inst.*, 285 F. Supp. 3d at 208 ("[T]here's a difference between kindly asking records custodians to help, and enlisting the Attorney General's coercive power."). And, in the FRA context, courts "must be wary of relying solely on the agencies' self-assessment." *Judicial Watch, Inc. v. Tillerson*, 293 F. Supp. 3d 33, 41 (D.D.C. 2017), *aff'd sub nom. Judicial Watch, Inc. v. Pompeo*, 744 F. App'x 3 (D.C. Cir. 2018).

Defendants' trust is misplaced. It was Secretary Shulkin who engaged in an extensive practice of unlawfully removing records of his communications from agency custody in the first place, and who appeared to do so specifically in order to deprive watchdog groups like Plaintiffs, as well as congressional committees, from obtaining lawful access to his official communications. The former Secretary has explicitly refused to confirm that he has returned all of the federal records he removed. *See* Buck Decl. Ex. B. Defendants' Status Report, further, acknowledges the insufficiency of Secretary Shulkin's initial efforts to return records to agency custody. Defs.' Status Report ¶ 3.

Defendants' "refusal to turn to the law enforcement authority of the Attorney General," as mandated by § 3106, or their delay in undertaking that required action, creates a significant risk that wrongfully removed records will never be recovered. *Cause of Action Inst.*, 285 F. Supp. 3d at 209. Moreover, courts have long recognized that time is of the essence with respect to Plaintiffs' rights to the production of public records because "stale information is of little value." *Payne Enterprises, Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988). Defendants provide no timetable at all for when their "ongoing processes" will conclude and, in their view, finally permit judicial review of Plaintiffs' claims. All records not recovered during Defendants' unreasonable and unjustified delay in carrying out their statutorily required duty to initiate an enforcement action harms Plaintiffs and the public they serve by denying access to public

records of the official communications of a Cabinet official.

## CONCLUSION

For the foregoing reasons, Plaintiffs American Oversight and Democracy Forward Foundation respectfully request that this Court deny Defendants' motion to dismiss this action as unripe for judicial review.

Dated: January 16, 2020

Respectfully submitted,

*/s/ Daniel A. McGrath*
Daniel A. McGrath
D.C. Bar No. 1531723
John E. Bies
D.C. Bar No. 483730

AMERICAN OVERSIGHT
1030 15th Street NW, B255
Washington, DC 20005
(202) 897-4213
daniel.mcgrath@americanoversight.org
john.bies@americanoversight.org

Benjamin Seel
D.C. Bar No. 1035286

DEMOCRACY FORWARD
FOUNDATION
P.O. Box 34553
Washington, D.C. 200043
(202) 448-9090
bseel@democracyforward.org

*Counsel for Plaintiffs*